**FILED**

MAY 19 2005

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIVIAN J. RENTA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | **JURY DEMANDED**   JUDGE GOTTSCHALL |
| | ) | |
| v. | ) | **05 C 2995** |
| | ) | |
| COUNTY OF COOK, | ) | |
| RUSSELL TOMAR, M.D., individually, | ) | |
| and MARIN SEKOSAN, M.D., | ) | |
| individually, | ) | MAGISTRATE JUDGE |
| | ) | GERALDINE SOAT BROWN |
| Defendants. | ) | |

## COMPLAINT

Plaintiff VIVIAN J. RENTA, M.D., by and through her attorney, Charmaine E.

Dwyer, complains against Defendants COUNTY OF COOK, RUSSELL TOMAR, M.D.,

individually, and MARIN SEKOSAN, M.D., individually, as follows:

### Introduction

1.      Plaintiff VIVIAN J. RENTA, M.D. ("DR. RENTA") brings this action to

redress the unlawful discriminatory and retaliatory actions of Defendants culminating in

her suspension on May 22, 2003 and the termination effective September 21, 2004 of her

employment with Defendant COUNTY OF COOK ("COOK COUNTY") as a Senior

Attending Physician at John H. Stroger, Jr. Hospital of Cook County in violation of her

rights under the Constitution of the United States, federal statutes, and state law as set

forth herein.

2.      Specifically, this lawsuit seeks awards of back pay and benefits, future

losses of salary and benefits, compensatory damages, punitive damages against the

individual Defendants, attorney's fees, other monetary damages, and equitable and injunctive relief including but not limited to reinstatement to employment, for: retaliation in violation of the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983 ("Section 1983") (Count I); race discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981")(Count II); race, national origin and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII")(Count III); and deprivation of equal protection of the law based upon race and gender in violation of the Fourteenth Amendment to the Constitution of the United States and Section 1983 (Counts IV and V).

### Jurisdiction and Venue

3.     This action is brought pursuant to Section 1983, Section 1981, Title VII, and the First and Fourteenth Amendments to the Constitution of the United States. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a).

4.     Venue is proper under 28 U.S.C. 1391(b) because the events giving rise to the claims alleged herein occurred within the Northern District of Illinois.

### The Parties

5.     Plaintiff DR. RENTA is and at all times relevant was a female, Hispanic citizen of the United States, born in Puerto Rico, and a resident of Elmwood Park, Cook County, Illinois. DR. RENTA was employed by Defendant COOK COUNTY as a physician in the Department of Pathology at John H. Stroger, Jr. Hospital of Cook County and previously Cook County Hospital, from September 1995 until her

2

employment was terminated effective September 21, 2004. DR. RENTA's last job title with Defendant COOK COUNTY was Senior Attending Physician.

6.    At all times relevant Defendant RUSSELL TOMAR, M.D. (" DR. TOMAR") was Chairman of the Department of Pathology at John H. Stroger, Jr. Hospital of Cook County and previously Cook County Hospital. He is sued herein in his individual capacity.

7.    At all times relevant Defendant MARIN SEKOSAN, M.D. ("DR. SEKOSAN") was Director, Anatomical Pathology, in the Department of Pathology at John H. Stroger, Jr. Hospital of Cook County and previously Cook County Hospital. He is sued herein in his individual capacity.

8.    Defendant COOK COUNTY is a home rule unit of local government pursuant to Article VII § 6(a) of the 1970 Illinois Constitution. The John H. Stroger, Jr. Hospital of Cook County, previously known as Cook County Hospital, is a public hospital organized under the laws of the State of Illinois. The Cook County Board of Commissioners at all times relevant was the governing body for COOK COUNTY, Cook County Hospital, and the John H. Stroger, Jr. Hospital of Cook County. John H. Stroger, Jr. Hospital of Cook County opened in late 2002 and replaced Cook County Hospital.

9.    All Defendants identified above have acted and continue to act under color of state law in the State of Illinois at all times relevant to this Complaint.

### Statement of Facts

10.    DR. RENTA is and at all times relevant was a physician licensed to practice medicine in the State of Illinois and Board Certified in Anatomical and Clinical Pathology by the American Board of Pathology.

3

11.     On September 1, 1995, DR. RENTA received an appointment as a part-time Service Physician in the Department of Pathology at Cook County Hospital. DR. RENTA in June 1997 was appointed as a full-time Senior Attending Physician in Department of Pathology at Cook County Hospital and was employed in that position at Cook County Hospital and subsequently at John H. Stroger, Jr. Hospital of Cook County until her termination effective September 21, 2004.

12.     DR. RENTA was at all times during her employment by Defendant COOK COUNTY a highly dedicated pathologist, who practiced medicine in a professional, competent, and ethical manner in accordance with the established standards of her profession and the legitimate expectations of Defendant COOK COUNTY.

13.     Defendant DR. TOMAR, a Caucasian male, has been Chairman of the Department of Pathology at John H. Stroger, Jr. Hospital of Cook County/Cook County Hospital since November 1, 1999.

14.     Defendant DR. SEKOSAN, a Caucasian male, has been Director, Anatomical Pathology, in the Department of Pathology at John H. Stroger, Jr. Hospital of Cook County/Cook County Hospital since April 17, 2001.

15.     After DR. RENTA was appointed as a full-time physician in 1997 she was selected by clinicians to represent the Department of Pathology at weekly meetings of the Gynecologic Oncology Tumor Board and Breast Oncology Conference at Cook County Hospital. DR. RENTA served as a member of these conferences for approximately five years until 2002.

16.     Through her participation in Gynecologic Oncology Tumor Board and Breast Oncology Conference as well her active involvement in the quality assurance

4

functions of the Department of Pathology, DR. RENTA earned the appreciation and respect of clinicians at Cook County Hospital as an exceptionally competent pathologist who was extremely interested in patient welfare and adhered to the highest ethical and professional standards.

17.     DR. RENTA repeatedly was praised by clinicians on the Gynecologic Oncology Tumor Board and Breast Oncology Conference for her professionalism and candor; although other physicians in the Department of Pathology historically had a reputation among clinicians for defensiveness and obstructionism in refusing to admit to fault or error on their part, DR. RENTA acknowledged issues that were of concern to the clinicians present at Gynecologic Oncology Tumor Board and Breast Oncology Conference meetings and suggested strategies for resolving them.

18.     As a result of her unwillingness to participate in the culture of obstructionism that pervaded the Department of Pathology or to lie or cover up for the misdiagnoses, tardiness, and negligence of colleagues, DR. RENTA's fellow pathologists became openly hostile toward her and falsely accused her of lack of collegiality and professionalism, including unfounded assertions that she discussed correct diagnoses with clinicians behind the backs of other pathologists rather than following the Department of Pathology's established procedures for reaching consensus with respect to diagnoses.

19.     In approximately December 1999, shortly after DR. TOMAR became Chairman of the Department of Pathology, DR. RENTA sent him a memorandum concerning a disturbing observation that she had made regarding patient laboratory reports. Specifically, DR. RENTA reported to DR. TOMAR that she had found outsourced clinical reports done at other medical facilities that had been rewritten and

released in the computer by Dr. Emmadi, another pathologist at Cook County Hospital, so that the patient ended up with two reports for the same procedure, which created confusion in the patient's records regarding the site where the test took place and gave residents and clinicians the misleading impression that Dr. Emmadi was the interpreter of the report. DR. RENTA also was concerned that, since outsourced testing was pre-budgeted, having a second report for a patient might facilitate a duplicate billing for the same procedure by COOK COUNTY to payors such as Medicare or Medicaid. DR. TOMAR refused to become involved and told DR. RENTA she would need to address the matter with Dr. Emmadi. DR. RENTA requested Dr. Emmadi not to recopy reports pertaining to her cases in the future.

20. On April 17, 2001, DR. TOMAR appointed DR. SEKOSAN as Director of Anatomical Pathology for the Department of Pathology. After assuming this position, DR. SEKOSAN continuously berated DR. RENTA, discouraged her from speaking out about the welfare of patients and presenting dissenting opinions concerning diagnoses during conferences, and attempted to exclude her from conferences; DR. SEKOSAN encouraged DR. RENTA's male and non-Hispanic/non-Puerto Rican colleagues to speak freely during conferences.

21. Following DR. SEKOSAN's appointment, DR. RENTA's status steadily deteriorated as DR. TOMAR and DR. SEKOSAN took numerous actions intended to diminish DR. RENTA's professional reputation and standing among her colleagues and to undermine her ability to function as a pathologist at Cook County Hospital.

22. By a complaint letter dated May 31, 2001 to Dr. Rachel Rubin, then Chair of the Executive Medical Staff Peer Review Committee, DR. TOMAR requested that

DR. RENTA be brought to the Peer Review Committee for investigation of an alleged incident that recently had occurred in the Department of Pathology. In his letter to Dr. Rubin, DR. TOMAR viciously and without any basis in fact attacked the character and professionalism of DR. RENTA and also disparaged Dr. L. Stewart Massad, then Chairman of the Division of Gynecologic Oncology at Cook County Hospital. Specifically, DR. TOMAR asserted: "Drs. Renta and Massad evoke little or no trust on the part of the Attendings in the Department of Pathology. Their behavior, I believe might be characterized as 'abusive'. This has impacted patient care operations intra- and interdepartmentally."

23.     Under the Cook County Hospital Medical Staff By-Laws an investigation by the Peer Review Committee was the first step in initiating disciplinary action against a physician. At the conclusion of their investigation, the Peer Review Committee was required to forward its recommendation in writing to the Executive Medical Staff. The Peer Review Committee under the By-Laws could recommend any of six actions ranging from dismissal of the charges to suspension or revocation of staff membership.

24.     In a memorandum dated July 3, 2001 to DR. RENTA, Dr. Rubin notified DR. RENTA that the Peer Review Committee was investigating DR. TOMAR's charges that "when [DR. RENTA] sent out slides for review by an outside pathologist without approval of the Division Chair of Surgical Pathology or after review of the case and a recommendation by the Consensus Conference, [DR. RENTA] disrupted hospital operations."

25.     In a memorandum dated July 7, 2001 to Dr. Rubin, DR. TOMAR further falsely and maliciously assailed DR. RENTA's reputation by stating: "I believe that Dr.

7

Renta's behavior 'might reasonably be considered detrimental to…the delivery of acceptable patient care, or to be lower than the ethical or other professional standards of the medical community or to be disruptive or deleterious to the operations of the hospital….[']"

26.     The alleged incident upon which DR. TOMAR based his request to initiate the Peer Review Committee's investigation of DR. RENTA began in February 2001 when a patient who previously had been biopsied at another facility was referred to Dr. Massad; Quest Diagnostics' pathologist had performed the prior pathologic diagnosis and reported finding adenocarcinoma in-situ and moderate dysplasia. Dr. Shamima Zaheer, a pathologist at Cook County Hospital, after consultation with Dr. Jaya Ahuja, then Acting Co-Chair of Surgical Pathology at Cook County Hospital, concluded that the slides showed moderate dysplasia; the outside diagnosis of adenocarcinoma in-situ was not even acknowledged in the report of Drs. Zaheer and Ahuja.

27.     Dr. Massad, questioned Drs. Zaheer and Ahuja's diagnosis and asked that the slides be requested again from Quest Diagnostics in order to have them reviewed by an outside consultant. For two months, Drs. Zaheer and Dr. Ahuja failed to request the slides from the outside facility; when the slides finally arrived on April 3, 2001, DR. RENTA examined them and agreed with the original diagnosis of adenocarcinoma in-situ. DR. RENTA then asked Dr. Ahuja for permission to have the slides reviewed by Dr. Bitterman, a pathologist at Rush-Presbyterian St. Luke's Medical Center with whom pathologists at Cook County Hospital frequently consulted. Dr. Ahuja appeared angry at DR. RENTA's request and said "do what you want, but get a report only if Dr. Bitterman

agrees with my diagnosis of no adenocarcinoma found." The slides were then sent to Dr. Bitterman, who agreed with the adenocarcinoma in-situ diagnosis.

28.     After Dr. Bitterman reviewed the slides and concurred with the diagnosis of adenocarcinoma in-situ, Dr. Ahuja sent the slides out for yet another review by Dr. Robert H. Young at Massachusetts General Hospital who, in a letter dated April 19, 2001, agreed that the slides showed adenocarcinoma in-situ. A patient with adenocarcinoma in-situ requires much more careful and frequent follow-up than a patient with moderate dysplasia and the two-month delay in confirming the diagnosis of adenocarcinoma in-situ potentially endangered the patient.

29.     In requesting the Peer Review Committee investigation of this incident, DR. TOMAR reported that DR. RENTA had not obtained proper authorization to send the slides out to Dr. Bitterman and that her actions had been disruptive to the operations of the hospital even though DR. TOMAR knew or upon even minimal inquiry would have known that she had in fact obtained Dr. Ahuja's permission and that these allegations were untrue. DR. TOMAR also falsely asserted that DR. RENTA had acted inappropriately by contradicting colleagues and disagreeing with their diagnoses, despite the fact that DR. RENTA's correct diagnosis and request to send the slides to Dr. Bitterman to confirm her diagnosis when it differed from the earlier diagnosis of Dr. Zaheer was the reason that the patient's condition eventually was accurately diagnosed and treated properly.

30.     After conducting an investigation of DR. TOMAR's allegations, the Peer Review Committee on September 6, 2001 issued a written report in which it cleared DR. RENTA of any wrongdoing with respect to this incident and recommended that the

charges against her be dismissed. Despite the Peer Review Committee's recommendation, the Executive Medical Staff at the insistence of DR. TOMAR proposed to place a letter of reprimand in DR. RENTA's personnel file. DR. RENTA was informed of the Executive Medical Staff's intention to place the letter of reprimand in her file by Dr. Peter Orris, President of the Executive Medical Staff when he telephoned her to inform her of the Peer Review Committee's recommendation. After DR. RENTA informed Dr. Orris that she would bring legal action if necessary to fight the inclusion of such an unwarranted letter of reprimand in her file, no letter of reprimand was issued.

31.     While the Peer Review Committee was conducting its investigation, Dr. SEKOSAN proposed to DR. RENTA that he would provide her with excellent recommendations if she would resign. During the same time frame, DR. TOMAR offered to make arrangements for DR. RENTA to "talk to somebody" and insinuated that she was mentally and/or emotionally unbalanced.

32.     The biannual recredentialing of all physicians at Cook County Hospital took place in November 2001. Although DR. RENTA submitted the necessary documentation to DR. TOMAR on three separate occasions, he refused to process and sign her recredentialing papers and falsely claimed that the documents submitted by DR. RENTA were lost or incomplete. DR. TOMAR signed the recredentialing papers of DR. RENTA's colleagues who were non-Hispanic/non-Puerto Rican, male, and/or had not spoken out about matters of public concern.

33.     During 2002, DR. SEKOSAN informed DR. RENTA that she was no longer welcome at the Gynecologic Oncology Tumor Board conferences. Also during 2002, DR. RENTA was forced to resign from the Breast Oncology Conference because

of DR. SEKOSAN's continuing abusive and disparaging behavior toward her during conferences. In addition, the work schedule for the Department of Pathology was revised without any explanation so that DR. RENTA was excluded from diagnosing gynecological and breast surgery cases which were received on Tuesdays and Thursdays.

34.     DR. SEKOSAN beginning in 2002 also imposed strict limitations on DR. RENTA's ability to seek outside consultations and directed her to send all consults to only two places; DR. SEKOSAN did not impose such restrictions upon any of the other pathologists he supervised, who were non-Hispanic/non-Puerto Rican, male, and/or had not spoken out about matters of public concern.

35.     DR. TOMAR and DR. SEKOSIAN, and others acting with their encouragement and/or approval repeatedly engaged in malicious and unwarranted attacks upon DR. RENTA by mischaracterizing her disagreements with misdiagnoses and efforts to obtain proper review of discrepancies and ambiguities in diagnoses in the interest of patient safety and welfare as disruptive and non-collegial behavior and/or lack of competence on the part of DR. RENTA .

36.     On November 1, 2002, DR. RENTA sent a memorandum to Dr. Bradley Langer, Medical Director of Cook County Hospital in which she described the harassment and discrimination that she was being subjected to by DR. TOMAR and DR. SEKOSAN and demanded that it stop. In her memorandum, DR. RENTA also requested that her salary be raised to the level of her less experienced colleagues. DR. RENTA received no response to this memorandum from Dr. Langer. However, on November 12, 2002 DR. TOMAR issued a written reprimand to DR. RENTA, which he copied to Dr. Langer, Ruth Rothstein, Chief of the Cook County Bureau of Health Services, Lacy

Thomas, Director of John H. Stroger, Jr. Hospital of Cook County, and DR. SEKOSAN, in which he falsely and maliciously accused DR. RENTA of "a continuing and possibly accelerating pattern of inappropriate behavior including abuse and possible intimidation of fellow employees by attempting to attack their reputations, gross insubordination and negligence in performance of your duties by not following Divisional and Departmental practices." In the November 12, 2002 letter of reprimand, DR. TOMAR also attempted to further damage DR. RENTA's reputation and credibility and to convey the erroneous impression that DR. RENTA was mentally or emotionally unstable by directing DR. RENTA to meet with an Employee Assistance Representative to review her fitness for duty.

37.     As a consequence of the conduct of DR. TOMAR and DR. SEKOSAN described above, DR. RENTA's ability to practice medicine as a pathologist and her credibility and stature in the eyes of both her colleagues and the administration at Cook County Hospital were substantially, unjustifiably and irreparably undermined, impaired and diminished.

38.     Throughout her employment at Cook County Hospital, DR. RENTA's salary was significantly lower than that of less experienced non-Hispanic/non-Puerto Rican and male colleagues in the Department of Pathology.

39.     On February 28, 2003, DR. RENTA filed Charge of Discrimination Number 210A302144 with the Equal Employment Opportunity Commission ("EEOC") alleging  that she had been harassed and paid less than her peers because of her national origin and gender in violation of Title VII. DR. TOMAR was aware of DR. RENTA's EEOC charge and participated in preparing a response to the charge.

12

40. Between May 12, 2003 and May 26, 2003, DR. RENTA was out of the country on vacation. DR. RENTA returned to work on May 27, 2003 to find that the Department of Pathology's work schedule had been written for one week, rather than the usual four weeks, and that DR. TOMAR was on vacation. Late in the evening on May 27, 2003, Dr. Kovarik, one of DR. RENTA's colleagues in the Department of Pathology telephoned DR. RENTA and informed her that at a monthly departmental staff meeting on May 22, 2003, DR. TOMAR had announced that DR. RENTA was being suspended effective May 27, 2003. DR. RENTA subsequently received a one-sentence letter dated May 22, 2003 from DR. TOMAR informing her of that she had been suspended effective May 27, 2003 pending peer review; the letter had been sent to a prior address that DR. RENTA had not lived at for five years, even though the Department of Pathology annually gathered updated contact information from physicians and DR. RENTA's current address had been known to the Department for several years.

41. In a letter dated May 22, 2003 to Dr. Peter Orris, President of the Medical Staff of John H. Stroger, Jr. Hospital of Cook County, which he copied to Dr. Langer and Mr. Thomas, DR. TOMAR informed Dr. Orris that DR. RENTA was being suspended pending peer review effective May 27, 2003. In this correspondence to Dr. Orris, DR. TOMAR falsely characterized DR. RENTA as "threat to patient safety" and enumerated the purported reasons for summarily suspending her and initiating disciplinary proceedings, which included false allegations of misdiagnoses of cases, failure to conform to Departmental policies and procedures, failure to follow good medical practice, failure to act collegially with member of the Department, and failure to apply for recredentialing to the Medical Staff. All of the charges cited by DR. TOMAR were

factually inaccurate, misrepresented, exaggerated, baseless and/or outright fabrications. Several of the supposed incidents of misdiagnosis included in DR. TOMAR's May 22 letter to Dr. Orris were co-signed or confirmed by other pathologists who were not suspended or otherwise disciplined along with DR. RENTA.

42.     DR. RENTA was summarily suspended effective May 27, 2003 despite the fact that other physicians who were non-Hispanic/non-Puerto Rican, male, and/or had not spoken out about matters of public concern had been permitted to continue to working while disciplinary investigations or proceedings relating to allegations of comparable or greater seriousness were pending against them.

43.     Pursuant to the procedures in the Medical Staff Bylaws, a Peer Review Committee investigated the allegations against DR. RENTA and, following their investigation, on September 9, 2003 issued their Final Recommendations that DR. RENTA be allowed to return to work immediately and to work independently with a two to three month observation period.  Dr. Orris denied several requests made by or on behalf of DR. RENTA for complete copies of the Peer Review Committee's report of its investigation and the documents considered by the Peer Review Committee in making its Final Recommendations.

44.     Despite the Peer Review Committee's recommendations and apparently without waiting for the recommendations to be completed, the Executive Medical Staff on September 4, 2003, met and voted to recommend that DR. RENTA's Medical Staff privileges and clinical privileges be revoked.  The Executive Medical Staff communicated this recommendation to the Medical Director, Dr. Langer.  By a letter dated September 16, 2003 from Dr. Langer, DR. RENTA was informed of the Executive

14

Medical Staff's September 4, 2003 decision. Pursuant to the procedures in the Medical Staff Bylaws, DR. RENTA requested a hearing to contest the Executive Medical Staff's recommendation.

45. During the hearing which took place on various dates between October 8, 2003 and April 14, 2004 before a Hearing Committee selected and appointed by the President of the Executive Medical Staff, DR. RENTA proffered and introduced, or attempted to introduce, evidence that refuted all of the false and distorted allegations and fabricated evidence against her. While the Hearing Committee allowed the Executive Medical Staff, acting through DR. TOMAR and DR. SEKOSAN, to present many hours of uninterrupted testimony and evidence, including testimony and evidence pertaining to the same matters for which DR. RENTA had been exonerated of any improper conduct during the 2001 Peer Review Committee investigation, it refused to hear much of the evidence that DR. RENTA proffered, was repeatedly rude and impatient toward DR. RENTA, interrupted and curtailed her examination of witnesses, presentation of exhibits and testimony, and denied her a fair and reasonable opportunity to be heard.

46. During the hearing, the Executive Medical Staff, represented by DR. TOMAR AND DR. SEKOSAN, introduced "statistics" purportedly showing that a total of nine "critical errors" had been committed by pathologists in the Department of Pathology at Cook County Hospital between May 1, 2001 and May 31, 2003, and that eight supposedly had been committed by DR. RENTA. The Executive Medical Staff failed to substantiate any of the methods it claimed to have used to compile or assign responsibility for the nine "critical errors" it identified. Moreover, at the hearing DR. RENTA attempted to introduce evidence of approximately 20 more serious "critical

15

errors" committed by other pathologists during the much shorter time period of December 2000 through July 2001 that were documented in the quality assurance reports of the Gynecologic Oncology Tumor Board, which had resulted in actual harm to patients. None of the critical errors that DR. RENTA brought to the attention of the Hearing Committee were included in the "statistics" compiled by the Executive Medical Staff or resulted in disciplinary action being taken against the responsible pathologists.

47. DR. RENTA also introduced or sought to introduce testimony and evidence at the hearing demonstrating by clear and convincing evidence that each of the alleged critical errors of which she was accused and the "evidence" that the Executive Medical Staff presented to support them had been misrepresented, fabricated or had no basis in fact.

48. The following are merely a few examples of the false and misleading testimony and evidence that the Executive Medical Staff, represented by DR. TOMAR and DR. SEKOSAN, offered against DR. RENTA during the hearing:

A. In order to substantiate an allegation that DR. RENTA had failed to examine or to properly examine a kidney because she had reported that the ureter on the specimen was not visualized, while the ureter supposedly was found by DR. SEKOSAN when he subsequently examined the same specimen, the Executive Medical Staff introduced a photograph that depicted a kidney with the ureter plainly visible, which it represented was the kidney in question at the time it was examined by Dr. SEKOSAN. The photograph, however, was clearly a falsification and not the same kidney since the kidney in the photo was whole and

the specimen that DR. RENTA had examined had been halved and serially sectioned before the photograph supposedly was taken;

B. The Executive Medical Staff introduced testimony and evidence before the Hearing Committee that it falsely contended demonstrated that DR. RENTA had possibly misdiagnosed a breast cancer patient as positive for malignancy based upon a fine needle aspiration taken from the patient's right axillary mass in October 2000 and subsequently delayed five months in sending slides out for consultation. The patient had undergone a left mastectomy in October 2000, after which the patient received chemotherapy and radiation and then was placed on tamoxifen. However in October 2001, one year later, without any further involvement on the part of DR. RENTA, a right mastectomy was performed on the patient, apparently without the benefit of a new biopsy or fine needle aspiration; the patient's right breast and lymph nodes after being removed did not test positive for malignancy. Given the extensive treatment that the patient had received following the left mastectomy, it would not have been unusual not to find cancer anywhere else a year later. In the proceedings before the Hearing Committee, however, the Executive Medical Staff falsely insinuated that DR. RENTA's October 2000 finding of malignancy was a misdiagnosis and the cause of the surgeon's inexplicable decision to perform the mastectomy a year later to remove what apparently turned out to be a healthy breast without first obtaining a current fine needle aspiration or biopsy. The Executive Medical Staff also presented this allegation despite knowing that the correctness of DR. RENTA'S October 2000 diagnosis had been confirmed by Dr. Diva R. Salomao,

a pathologist at the Mayo Clinic, after the same slides that DR. RENTA had
reviewed in October 2000 were sent to Dr. Salomao for review in December
2001. The Executive Medical Staff also falsely asserted that DR. RENTA had
delayed for five months in sending out the slides for review when in fact she had
promptly sent them to Mayo Clinic after DR. SEKOSAN asked her to seek a
consultation in December 2001;

      C.     The Executive Medical Staff falsely characterized as a
"misdiagnosis" DR. RENTA's interpretation in 2002 of a prostatic biopsy as
"atypical" and "suspicious for carcinoma." Prostatic biopsies routinely were
reviewed by Dr. Vera Ray, a pathologist at Provident Hospital, who was the wife
of the surgeon who was treating the patient in question at Cook County Hospital.
In this particular case, Dr. Vera Ray concluded that the biopsy showed
malignancy and a radical prostatectomy was performed on the patient. The
pathologist who examined the radical prostatectomy specimen after the surgery
found a tiny 2.0-mm. focus of cancer. DR. SEKOSAN admitted that this
diagnosis was difficult. Such differences in interpretation were not considered
"misdiagnoses" when they involved pathologists at Cook County Hospital other
than DR. RENTA.

      49.    The Hearing Committee consistently refused to consider or summarily
disregarded testimony and evidence that DR. RENTA introduced or attempted to
introduce during the hearing which refuted the Executive Medical Staff's spurious
allegations.

18

50. After the hearing, on May 25, 2004, the Hearing Committee, despite the lack of credible evidence to substantiate the Executive Medical Staff's allegations recommended revocation of DR. RENTA's staff membership. The Executive Medical Staff's recommendation was forwarded to and adopted by Joint Conference Committee. Based upon these recommendations, the Board of Commissioners of Cook County on September 21, 2004 voted to terminate DR. RENTA's Medical Staff membership and clinical privileges and discharged her effective September 21, 2004.

### Count I: Deprivation of First Amendment Rights Under Section 1983 Against Defendants DR. TOMAR, DR. SEKOSAN, AND COOK COUNTY

51. Paragraphs 1 through 50 are hereby restated and realleged as if fully set forth in Count I.

52. DR. RENTA repeatedly spoke out or attempted to speak out on matters of public concern while employed by Defendant COOK COUNTY, namely with regard to the misdiagnoses, negligence, acts of concealment and other wrongdoing of her colleagues and other conduct adversely affecting the health, safety and welfare of patients at Cook County Hospital, and made it known that she would not lie or cover-up for her colleagues with regard to such matters of public concern.

53. DR. RENTA had a right under the First and Fourteenth Amendments of the United States Constitution to speak out on these matters of public concern and her right to do so outweighed any countervailing interest of Defendants.

54. Defendants DR. TOMAR, DR. SEKOSAN, and COOK COUNTY, acting under color of state law and without legitimate justification, intentionally engaged in a campaign of harassment and retaliation deliberately aimed at silencing and discrediting DR. RENTA and chilling and thwarting her attempts to speak out on matters of public

concern, which culminated in her suspension effective May 27, 2003, the Hearing Committee's May 25, 2004 recommendation, and her discharge effective September 21, 2004.

55.     Defendant COOK COUNTY, through the actions and omissions of its final policy-making and decision-making officials, engaged in, authorized, approved, and established the widespread campaign of harassment and retaliation against DR. RENTA, was deliberately indifferent to the campaign of harassment and retaliation that was leveled against DR. RENTA, and further established a general policy and custom of harassment and retaliation against DR. RENTA and other employees who spoke out on matters of public concern at Cook County Hospital and John H. Stroger, Jr. Hospital of Cook County.

56.     The actions of Defendants, as set forth above, were intentional, willful, and malicious and/or in reckless disregard of DR. RENTA's rights under the First and Fourteenth Amendments to United States Constitution as secured by 42 U.S.C. § 1983.

57.     As a direct and proximate result of Defendants' unlawful conduct, as set forth above, DR. RENTA has suffered and continues to suffer substantial losses of wages and benefits, and other past and future pecuniary losses, as well as great emotional distress and mental anguish, humiliation, embarrassment, inestimable injury to her personal and professional reputation, and loss of her ability to practice medicine as a pathologist.

WHEREFORE, Plaintiff VIVIAN J. RENTA, M.D. seeks the following relief as to Count I of the Complaint:

A.    Entry of judgment in Plaintiff's favor and against all Defendants for their violations of Plaintiff's constitutional and statutory rights;

B.    Reinstatement to her former position with Defendant COOK COUNTY with full salary, seniority and benefits that Plaintiff would have attained had she not been unlawfully discharged;

C.    Judgment against all Defendants for all salary, wages, and benefits that Plaintiff would have received, but for her unlawful termination, including but not limited to, back pay, front pay, past and future pecuniary losses, and prejudgment interest;

D.    Judgment for compensatory damages against all Defendants, in an amount to be determined at trial;

E.    Judgment for punitive damages against the individual Defendants in their individual capacities in an amount to be determined at trial;

F.    An award of the costs of this action against all Defendants, including reasonable attorney's fees in accordance with 42 U.S.C. § 1988;

G.    An order requiring Defendants to remove any and all negative information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously has been communicated or disseminated to any public agency, licensing or regulatory board, professional organization, or third party relating to Plaintiff and to refrain from communicating or disseminating any such negative information in the future;

H.    A permanent injunction preventing Defendants from further violations of Plaintiff's constitutional and statutory rights; and

I.      Such other and further relief as this Court may deem just and
equitable.

## Count II: Violations of Section 1981 (Race Discrimination and Retaliation) Against Defendants DR. TOMAR, DR. SEKOSAN, AND COOK COUNTY

58.     Paragraphs 1 through 50 are hereby restated and realleged as if fully set
forth in Count II.

59.     By the conduct described above, DR. RENTA was treated differently and
less favorably than similarly situated, non-Hispanic physicians in the Department of
Pathology by Defendants DR. TOMAR, DR. SEKOSAN, and COOK COUNTY with
regard to the terms and conditions of her employment, including the alleged conduct and
performance issues for which she was suspended and discharged.

60.     After DR. RENTA engaged in protected activity under Section 1981 by
complaining of unlawful discrimination internally and in Charge of Discrimination
Number 210A302144 which she filed with the Equal Employment Opportunity
Commission on February 28, 2003, Defendant COOK COUNTY retaliated against DR.
RENTA by suspending her effective May 27, 2003, recommending her discharge on May
25, 2004, and discharging her on September 21, 2004.

61.     By conduct including but not limited to that described above, Defendants
DR. TOMAR, DR. SEKOSAN, and COOK COUNTY intentionally discriminated
against DR. RENTA because of her race in the making, performance, and/or modification
of her contract of employment and in the enjoyment of the benefits, privileges, terms, and
conditions of said employment in violation of Section 1981.

62.     By conduct including but not limited to that described above, Defendants DR. TOMAR and DR. SEKOSAN acted with malice or reckless disregard for DR. RENTA's federally protected rights under Section 1981.

63.     As a direct and proximate result of Defendants' unlawful conduct, as set forth above, DR. RENTA has suffered and continues to suffer substantial losses of wages and benefits, and other past and future pecuniary losses, as well as great emotional distress and mental anguish, humiliation, embarrassment, inestimable injury to her personal and professional reputation, and loss of her ability to practice medicine as a pathologist.

WHEREFORE, Plaintiff VIVIAN J. RENTA, M.D. seeks the following relief as to Count II of the Complaint:

A.     Entry of judgment in Plaintiff's favor and against all Defendants for their violations of Plaintiff's rights under Section 1981;

B.     Reinstatement to her former position with Defendant COOK COUNTY with full salary, seniority and benefits that Plaintiff would have attained had she not been unlawfully discharged;

C.     Judgment against all Defendants for all salary, wages, and benefits that Plaintiff would have received, but for her unlawful termination, including, but not limited to back pay, front pay, past and future pecuniary losses, and prejudgment interest;

D.     Judgment for compensatory damages against all Defendants, in an amount to be determined at trial;

E.   Judgment for punitive damages against the individual Defendants in their individual capacities in an amount to be determined at trial;

F.   An award of the costs of this action against all Defendants, including reasonable attorney's fees in accordance with 42 U.S.C. § 1988;

G.   An order requiring Defendants to remove any and all negative information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously has been communicated or disseminated to any public agency, licensing or regulatory board, professional organization, or third party relating to Plaintiff and to refrain from communicating or disseminating any such negative information in the future;

H.   A permanent injunction preventing Defendants from further violations of Plaintiff's rights under Section 1981; and

I.   Such other and further relief as this Court may deem just and equitable.

## Count III:  Race, National Origin, and Sex Discrimination and Retaliation in Violation of Title VII Against Defendant COOK COUNTY

64.   Paragraphs 1 through 50 are hereby restated and realleged as if fully set forth in Count III.

65.   At all times pertinent to this action, Defendant COOK COUNTY was an employer subject to the provisions of Title VII.

66.   DR. RENTA has complied with all administrative prerequisites by filing on March 21, 2005 Charge of Discrimination Number 210-2005-03946 with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant COOK

24

COUNTY violated Title VII by discriminating against her based upon her race, national origin, and sex and retaliating against her for engaging in activity protected under Title VII. (A copy of Charge of Discrimination Number 210-2005-03946 is attached as Exhibit 1).

67.     On or about April 19, 2005, the U.S. Department of Justice, Civil Rights Division, issued by mail a Notice of Right to Sue to DR. RENTA with respect to Charge of Discrimination Number 210-2005-03946 and DR. RENTA has filed this lawsuit in federal district court within 90 days of receiving said Notice of Right to Sue. (A copy of the Notice of Right to Sue for Charge of Discrimination Number 210-2005-03946 is attached as Exhibit 2).

68.     By the conduct described above, DR. RENTA was treated differently and less favorably than similarly situated, non-Hispanic, non-Puerto Rican, and male physicians in the Department of Pathology by Defendant COOK COUNTY with regard to the terms and conditions of her employment, including the alleged conduct and performance issues for which she was suspended and discharged.

69.     After DR. RENTA engaged in protected activity under Title VII by complaining of unlawful discrimination internally and in Charge of Discrimination Number 210A302144 which she filed with the Equal Employment Opportunity Commission on February 28, 2003, Defendant COOK COUNTY retaliated against DR. RENTA by suspending her effective May 27, 2003, recommending her discharge on May 25, 2004. and discharging her on September 21, 2004.

70.     By the conduct described above, Defendant COOK COUNTY intentionally discriminated against DR. RENTA based upon her race, national origin and/or sex and/or retaliated against her for engaging in activity protected under Title VII.

71.     As a direct and proximate result of Defendant COOK COUNTY's unlawful conduct, as set forth above, DR. RENTA has suffered and continues to suffer substantial losses of wages and benefits, and other past and future pecuniary losses, as well as great emotional distress and mental anguish, humiliation, embarrassment, inestimable injury to her personal and professional reputation, and loss of her ability to practice medicine as a pathologist.

WHEREFORE, Plaintiff VIVIAN J. RENTA, M.D. seeks the following relief against Defendant COOK COUNTY as to Count III of the Complaint:

A.     Entry of judgment in Plaintiff's favor and against Defendant for its violations of Plaintiff's rights under Title VII;

B.     Reinstatement to her former position with Defendant with full salary, seniority and benefits that Plaintiff would have attained had she not been unlawfully discharged;

C.     Judgment against Defendant for all salary, wages, and benefits that Plaintiff would have received, but for her unlawful termination, including, but not limited to back pay, front pay, past and future pecuniary losses, and prejudgment interest;

D.     Judgment for compensatory damages against Defendant in an amount to be determined at trial;

E.      An award of the costs of this action against Defendant, including

reasonable attorney's fees;

F.      An order requiring Defendant to remove any and all negative

information from Plaintiff's personnel file and employment records and to correct

or withdraw any such information that it previously has communicated or

disseminated to any public agency, licensing or regulatory board, professional

organization, or third party relating to Plaintiff and to refrain from communicating

or disseminating any such negative information in the future;

G.      A permanent injunction preventing Defendant from further

violations of Plaintiff's rights under Title VII; and

H.      Such other and further relief as this Court may deem just and

equitable.


**Count IV:  Deprivation of Equal Protection Under the Laws Based Upon
Race Against Defendants DR. TOMAR, DR. SEKOSAN, AND COOK
COUNTY Under Section 1983**

72.      Paragraphs 1 through 50 are hereby restated and realleged as if fully set

forth in Count IV.

73.      By the conduct described above, DR. RENTA was treated differently and

less favorably than similarly situated, non-Hispanic physicians in the Department of

Pathology by Defendants DR. TOMAR, DR. SEKOSAN, and COOK COUNTY with

regard to the terms and conditions of her employment, including the alleged conduct and

performance issues for which she was suspended and discharged.

27

74.     Defendants DR. TOMAR, DR. SEKOSAN, and COOK COUNTY, acting
under color of state law, by conduct including but not limited to that set forth above,
intentionally, purposefully and willfully caused deprivations of DR. RENTA's
constitutionally protected right to equal protection under the laws, as guaranteed through
the Fourteenth Amendment to the United States Constitution and made enforceable
through 42 U.S.C. §1983, because of her race.

75.     Defendant COOK COUNTY, through the actions and omissions of its
final policy-making and decision-making officials engaged in, authorized, approved, and
established a widespread practice of discriminating against and depriving DR. RENTA of
equal protection under the laws because her race, and further established a general policy
and custom of discrimination against DR. RENTA and other Hispanic employees at Cook
County Hospital and John H. Stroger, Jr. Hospital of Cook County.

76.     The acts and omissions alleged herein were committed with the
knowledge, acquiescence, and active participation of the highest ranking officials of
COOK COUNTY or of those to whom final policy-making or decision-making authority
was delegated in the realm of personnel policy and employee discipline.

77.     The actions of Defendants, as set forth above, were intentional, willful,
and malicious and/or in reckless disregard of DR. RENTA's right to equal protection
under the laws under the Fourteenth Amendment to United States Constitution as secured
by 42 U.S.C. § 1983.

78.     As a direct and proximate result of Defendants' unlawful conduct, as set
forth above, DR. RENTA has suffered and continues to suffer substantial losses of wages
and benefits, and other past and future pecuniary losses, as well as great emotional

28

distress and mental anguish, humiliation, embarrassment, inestimable injury to her personal and professional reputation, and loss of her ability to practice medicine as a pathologist.

WHEREFORE, Plaintiff VIVIAN J. RENTA, M.D. seeks the following relief as to Count IV of the Complaint:

A.    Entry of judgment in Plaintiff's favor and against all Defendants for their violations of Plaintiff's constitutional and statutory rights;

B.    Reinstatement to her former position with Defendant COOK COUNTY with full salary, seniority and benefits that Plaintiff would have attained had she not been unlawfully discharged;

C.    Judgment against all Defendants for all salary, wages, and benefits that Plaintiff would have received, but for her unlawful termination, including, but not limited to back pay, front pay, past and future pecuniary losses, and prejudgment interest;

D.    Judgment for compensatory damages against all Defendants, in an amount to be determined at trial;

E.    Judgment for punitive damages against the individual Defendants in their individual capacities in an amount to be determined at trial;

F.    An award of the costs of this action against all Defendants, including reasonable attorney's fees in accordance with 42 U.S.C. § 1988;

G.    An order requiring Defendants to remove any and all negative information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously has been communicated or

disseminated to any public agency, licensing or regulatory board, professional

organization, or third party relating to Plaintiff and to refrain from communicating

or disseminating any such negative information in the future;

H.    A permanent injunction preventing Defendants from further

violations of Plaintiff's constitutional and statutory rights; and

I.    Such other and further relief as this Court may deem just and

equitable.

## Count V: Deprivation of Equal Protection Under the Laws Based Upon Gender Against Defendants DR. TOMAR, DR. SEKOSAN, AND COOK COUNTY Under Section 1983

79.    Paragraphs 1 through 50 are hereby restated and realleged as if fully set

forth in Count V.

80.    By the conduct described above, DR. RENTA was treated differently and

less favorably than similarly situated, male physicians in the Department of Pathology by

Defendants DR. TOMAR, DR. SEKOSAN, and COOK COUNTY with regard to the

terms and conditions of her employment, including the alleged conduct and performance

issues for which she was suspended and discharged.

81.    Defendants DR. TOMAR, DR. SEKOSAN, and COOK COUNTY, acting

under color of state law, by conduct including but not limited to that set forth above,

intentionally, purposefully and willfully caused deprivations of DR. RENTA's

constitutionally protected right to equal protection under the laws, as guaranteed through

the Fourteenth Amendment to the United States Constitution and made enforceable

through 42 U.S.C. §1983, because of her gender.

82.     Defendant COOK COUNTY, through the actions and omissions of its final policy-making and decision-making officials engaged in, authorized, approved, and established a widespread practice of discriminating against and depriving DR. RENTA of equal protection under the laws because her gender, and further established a general policy and custom of discrimination against DR. RENTA and other female employees at Cook County Hospital and John H. Stroger, Jr. Hospital of Cook County.

83.     The acts and omissions alleged herein were committed with the knowledge, acquiescence, and active participation of the highest ranking officials of COOK COUNTY or of those to whom final policy-making or decision-making authority was delegated in the realm of personnel policy and employee discipline.

84.     The actions of Defendants, as set forth above, were intentional, willful, and malicious and/or in reckless disregard of DR. RENTA's right to equal protection under the laws under the Fourteenth Amendment to United States Constitution as secured by 42 U.S.C. § 1983.

85.     As a direct and proximate result of Defendants' unlawful conduct, as set forth above, DR. RENTA has suffered and continues to suffer substantial losses of wages and benefits, and other past and future pecuniary losses, as well as great emotional distress and mental anguish, humiliation, embarrassment, inestimable injury to her personal and professional reputation, and loss of her ability to practice medicine as a pathologist.

WHEREFORE, Plaintiff VIVIAN J. RENTA, M.D. seeks the following relief as to Count V of the Complaint:

A.    Entry of judgment in Plaintiff's favor and against all Defendants for their violations of Plaintiff's constitutional and statutory rights;

B.    Reinstatement to her former position with Defendant COOK COUNTY with full salary, seniority and benefits that Plaintiff would have attained had she not been unlawfully discharged;

C.    Judgment against all Defendants for all salary, wages, and benefits that Plaintiff would have received, but for her unlawful termination, including, but not limited to back pay, front pay, past and future pecuniary losses, and prejudgment interest;

D.    Judgment for compensatory damages against all Defendants, in an amount to be determined at trial;

E.    Judgment for punitive damages against the individual Defendants in their individual capacities in an amount to be determined at trial;

F.    An award of the costs of this action against all Defendants, including reasonable attorney's fees in accordance with 42 U.S.C. § 1988;

G.    An order requiring Defendants to remove any and all negative information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously has been communicated or disseminated to any public agency, licensing or regulatory board, professional organization, or third party relating to Plaintiff and to refrain from communicating or disseminating any such negative information in the future

H.    A permanent injunction preventing Defendants from further violations of Plaintiff's constitutional and statutory rights; and

I.      Such other and further relief as this Court may deem just and

equitable.


**PLAINTIFF DEMANDS A TRIAL BY JURY**

             Respectfully submitted,


Charmaine E. Dwyer
Attorney for Plaintiff Vivian J. Renta, M.D.
70 West Madison Street
Suite 1400
Chicago, Illinois 60602
(312) 580-0777
Illinois ID# 6188848

CHARGE OF DISCRIMINATION

AGENCY | CHARGE NUMBER

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | FEPA |
| X | EEOC |

Illinois Department of Human Rights and EEOC

*State or local Agency, if any*

NAME(Indicate Mr., Ms., Mrs.)
Dr. Vivian J. Renta

HOME TELEPHONE (Include Area Code)
(708) 452 1178

STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH
1826 77th Court | Elmwood Park, Illinois 60707 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME
Cook County
(John H. Stroger, Jr. Hospital)

NUMBER OF EMPLOYEES, MEMBERS
501+

TELEPHONE (Include Area Code)
(312) 864-6000

STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY
1901 West Harrison Street  Chicago, Illinois 60612 | | Cook

NAME | TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| [X] RACE | [ ] COLOR | [X] SEX | [ ] RELIGION | [ ] AGE |
| [X] RETALIATION | [X] NATIONAL ORIGIN | [ ] DISABILITY | [ ] OTHER (Specify) |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)      LATEST (A

5/22/2003      9/21/2004

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED SHEET.

RECEIVED EEOC

MAR 2 1 2005

CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

3/16/05

Date | Charging Party (Signature)

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

EEOC FORM 5 (Test 10/94)

**EXHIBIT**

1

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 19...; See Privacy Act Statement before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 210-2005-03946 |

<u>Illinois Department of Human Rights</u>    and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Dr. Vivian J. Renta | (708) 452 1178 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1826 77th Court | Elmwood Park, Illinois 60707 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Cook County (John H. Stroger, Jr. Hospital) | 501+ | (312) 864-6000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1901 West Harrison Street | Chicago, Illinois 60612 | Cook |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | EARLIEST (ADEA/EPA)    LATEST (A... |
| ☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ AGE | 5/22/2003    9/21/2004 |
| ☒ RETALIATION   ☒ NATIONAL ORIGIN   ☐ DISABILITY   ☐ OTHER (Specify) | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED SHEET.

DEPT. OF HUMAN RIGHTS
MAR 2 1 2005
RECEIVED

RECEIVED EEOC
MAR ...

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 3/16/05    *Vivian Renta MD* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date    Charging Party (Signature) | |

EEOC FORM 5 (Test 10/94)

Complainant Name:    Vivian J. Renta
Charge Number:
Page 2

I        I was employed by Respondent Cook County as a physician in the Pathology
         Department at John H. Stroger, Jr. Hospital of Cook County from September
         1995 until September 21, 2004. My last job title with Respondent was Senior
         Attending Physician. On February 28, 2003, I filed Charge Number 210A302144
         with the Equal Employment Opportunity Commission alleging that I had been
         harassed and paid less than my fellow physicians based upon my national origin
         (Puerto Rican) and sex female.

II.      On May 22, 2003, I was notified that I was being suspended by Respondent
         effective May 27, 2003, pending peer review. The alleged bases for my
         suspension were that I failed to act collegially with other members of the
         department and that my professional competence was below standards for my
         profession and the hospital. Pursuant to Respondent's by-laws, a Peer Review
         Committee investigated the allegations against me and, following the
         investigation, on September 9, 2003 issued a report recommending that I be
         allowed to return to work immediately with a two to three month observation
         period. Respondent's Executive Medical Staff ignored the recommendations in
         the Peer Review Committee Report and on September 4, 2003 voted to
         recommend that my Medical Staff privileges and clinical privileges be revoked.
         Pursuant to the procedures in Respondent's by-laws, I requested a hearing to
         contest the Executive Medical Staff's action. At the hearing I proffered and
         introduced, or attempted to introduce, evidence that refuted the false allegations
         and fabricated evidence against me. After the hearing, on May 25, 2004, the
         Hearing Committee appointed by the president of the Executive Medical Staff
         nevertheless recommended revocation of my staff membership. The Executive
         Medical Staff's Recommendation was forwarded to and adopted by Respondent's
         Joint Conference Committee. Based upon these recommendations, the Board of
         Commissioners of Cook County on September 21, 2004 voted to terminate my
         Medical Staff membership and clinical privileges and I was discharged by
         Respondent effective September 21, 2004. The allegations that were the basis for
         Respondent's actions are false and pretextual. In addition, similarly situated
         male, non-Hispanic, and non-Puerto Rican physicians and physicians who have
         not filed discrimination charges have not been disciplined or discharged for
         conduct comparable to or worse than that of which I was accused.

III.     I believe that I have been discriminated against based upon my race, national
         origin and sex and retaliated against in violation of Title VII of the Civil Rights
         Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5059 2448

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Dr. Vivian J. Renta
c/o Charmaine E. Dwyer, Esquire
Law Office of Charmaine E. Dwyer
Attorney at law
70 W. Madison St., Ste. 1400
Chicago, IL  60602

April 19, 2005

Re:  EEOC Charge Against John H. Stroger, Jr. Hospital of Cook County
      No. 210200503946

Dear Dr. Renta:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

by  *Karen J. Ferguson*

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc:  Chicago District Office, EEOC
      John H. Stroger, Jr. Hospital of Cook County

**EXHIBIT**

2