# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VIVIAN J. RENTA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05 C 2995 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| COUNTY OF COOK, RUSSELL | ) | |
| TOMAR, M.D., individually, and | ) | |
| MARIN SEKOSAN, M.D., individually, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Vivian J. Renta ("Renta") was employed by John H. Stroger, Jr. Hospital of Cook County (the "Hospital") from 1995 until 2004, when the Cook County ("County") Board voted to terminate her membership and clinical privileges. Renta subsequently brought this suit against the County, Russell Tomar ("Tomar"), and Marin Sekosan ("Sekosan") (collectively, "defendants") pursuant to 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Renta asserts claims of race, national origin, and gender discrimination and retaliation. This case is presently before the court on defendants' motion for summary judgment and defendants' motion to strike certain factual statements by Renta in opposition to defendants' motion for summary judgment. For the reasons stated within, defendants' motion is granted in part and denied in part.

### I.    DEFENDANTS' MOTION TO STRIKE

Before addressing the factual background of this case, the court addresses defendants' motion to strike, by which defendants ask the court to disregard certain of:

Renta's responses to defendants' statement of facts; her statements of additional fact; and factual representations she makes in briefing but not in her statements of additional fact. (Doc. 140.)

## A.    Renta's Responses to Defendants' Statement of Facts

Defendants urge the striking of several of Renta's responses to their statements of fact for the following reasons.  First, defendants contend that Renta's affidavit, which she offers as evidentiary support for several of her responses, contradicts her sworn testimony and therefore should be disregarded, *see Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005), leaving several responses to defendants' statements of fact unsupported. Defendants assert that Renta's affidavit contradicts her deposition testimony regarding whether Tomar knew of an EEOC charge filed by Renta, which is a question relevant to her claim that he retaliated against her, discussed at greater length in Section IV within. Having reviewed the cited parts of Renta's affidavit and deposition transcript, the court does not find a contradiction between the two, and accordingly rejects defendants' first argument.

Second, defendants assert that Renta, in response to their statements of fact, raises a "dispute" not by contradicting their statements of fact, but rather by adding factual detail not part of the original statement of fact.  Renta's practice is not in strict conformity with the local rules, which require additional factual detail to be set forth separately.  *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).  However, the court declines to strike Renta's responses that add additional factual assertions because defendants do not explain adequately what prejudice they suffer by Renta's addition of factual material in her responses.

Third, defendants move to strike certain responses to their statements 12 and 52, in which Renta asserts that the statement of fact is "disputed" without citation to any evidence. Those responses do not cite any evidence in support and are deemed admitted. *Senske v. Sybase, Inc.*, 588 F.3d 501, 503-04 n.1 (7th Cir. 2009).

Fourth, defendants move to strike certain responses in which Renta states only "disputed" and re-cites the same evidence cited by defendants or cites new evidence without explaining how it raises a disputed issue of fact. For disputes raised by Renta without any explanation of the dispute, she bears the risk that any dispute will be disregarded. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Ammons*, 368 F.3d at 817. The court strikes Renta's responses to defendants' statements 10, 11, 15, 21, 36, 37, and 39 and deems those statements of fact admitted.

Fifth, defendants object that some of Renta's responses state only "disputed," and cite a multi-page document without citing a specific page. For example, Renta's responses to defendants' statements 29, 30, 31, 32, 35, and 41, all state "Disputed" and cite the entirety of defendants' Exhibit 24, a nineteen-page report. Such citations fail to comport with the Seventh Circuit's standards for opposing summary judgment, *see Ammons*, 368 F.3d at 817-18, and with this court's standing order on motions for summary judgment, *see* Standing Order 3 (noting that citations "must be specific. For example, a reference to a transcript that does not include the page and line numbers is not a 'specific' reference. The court ***will not*** search a multi-page document nor guess as to which language in a document the party relies upon." (emphasis in original)). Given the opportunity to respond to defendants' motion to strike, and an opportunity to rectify the deficiencies in her responses, Renta offers an explanation of each of her responses but,

critically, offers no specific page numbers in her cited Exhibit 24. (Doc. 52 at 11-13.) Accordingly, the court deems defendants' statements 29, 30, 31, 32, and 35 admitted.[1]

## B.    Renta's Evidence in Support of her Statement of Additional Facts

Defendants also move to strike six exhibits that Renta produces in response to defendants' motion for summary judgment, and her statements of additional facts based on those exhibits. Each of the exhibits at issue is pertinent only to Renta's First Amendment retaliation claim, which she brings pursuant to § 1983. The court resolves this part of defendants' motion in addressing Renta's First Amendment retaliation claim in section IV.A within.

## C.    Facts Proffered in Renta's Brief

Last, defendants move to strike certain factual statements in Renta's brief in opposition to defendants' motion for summary judgment on the ground that the statements are not contained in Renta's statement of additional facts. The court may disregard factual assertions in briefing that are unsupported by citations to statements of fact. *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1108-09 (7th Cir. 2004). However, with one exception discussed in regard to Renta's gender discrimination claim within, defendants do not identify any factual assertions contained solely in Renta's brief. The court declines to strike facts that are not specifically identified.

Defendants' motion to strike is granted in part and denied in remaining part.

---

[1]    The court declines to deem defendants' statement 41 admitted and instead strikes it for failure to cite specific page numbers, as required by the court's standing order. In statement 41, defendants rely on "the Written Summary of the Executive Medical Staff Representatives," which defendants attach as Exhibit 30, but cite no specific part of the exhibit, a thirteen-page document. Given that defendants seek to establish specific facts about the Summary, the court cannot accept a blanket citation to the Summary, just as it cannot accept Renta's citation to entire documents as her basis for disputing defendants' statements of facts.

## II. BACKGROUND

Renta began work at the Hospital in 1995 as a part-time pathologist. (Defs.' Stmt. ¶ 10.)[2] Tomar was Chairman of the Department of Pathology at the Hospital from 1999 until February 2007. (*Id.* ¶ 3.) Sekosan has been a Director of Anatomical Pathology in the Department of Pathology at the Hospital since 2001. (*Id.* ¶ 4.)

In 1996, Renta was suspended with pay, although the parties dispute the reason for her suspension. Upon completion of her suspension, Renta was reinstated to clinical duties, albeit with supervision. (*Id.* ¶¶ 10-11.) In the following years, several doctors at the Hospital complained that Renta breached Hospital protocol. The complaining doctors asserted that at several conferences Renta made presentations in which she misrepresented the complaining doctors' diagnoses and voiced her disagreement with those diagnoses without first consulting the doctors who originally made the diagnoses. (*Id.* ¶¶ 14-16.) Renta concedes that presentations revealing such disagreement were against Hospital protocol. (*Id.* ¶ 14.) Believing that Renta had difficulty relating to her colleagues, Tomar referred her to the Peer Review Committee (the "PRC") in 2001, but the PRC recommended that no disciplinary action be taken against Renta.[3] (Defs.' Stmt. ¶ 18.) Renta continued to work at the Hospital and, in September 2002, Tomar and Sekosan signed Renta's re-credentialing papers. (*Id.* ¶ 21.)

---

[2] Citations to the parties' statements of facts, responses thereto, and the record are as follows. Defendants' Local Rule 56.1 Statement of Undisputed Facts is cited as "Defs.' Stmt." Plaintiff's Rule 56.1(b)(3)(C) Statement of Material Facts as to Which There is No Genuine Issue is cited as "Pl.'s Stmt." Defendants' Responses and Objections to Plaintiff's Statement of Additional Facts Pursuant to L.R.56.1.(b)(3)(B) are cited as "Defs.' Resp." Exhibits offered by defendants in support of their statement of facts are cited "Defs.' Ex.," and exhibits offered by Renta in support of her statement of additional facts are cited "Pl.'s Ex."

[3] No party has explained adequately the membership or official function of the PRC. Based on the current record, the court can deduce only that the PRC was a body that investigated referred disciplinary issues and made recommendations to the Executive Medical Staff regarding the disposition of such issues. The function of the Executive Medical Staff is discussed further within.

On February 27, 2003, a Hospital doctor wrote a memorandum to Sekosan, copying Renta, complaining of Renta's lack of respect for her colleagues and specifically stating that Renta was "getting out of hand . . . ."  (*Id.* ¶ 25.)  The next day, Renta filed an Equal Employment Opportunity Commission ("EEOC") charge in which she complained of discrimination based on her gender and national origin, Puerto Rican.  (*Id.* ¶ 26.)

In May 2003, while conducting a random quality assurance review of pathology cases, Sekosan and two other pathologists uncovered a misdiagnosis made by Renta.  (*Id.* ¶ 29.)  Later that same month, Sekosan uncovered another misdiagnosis by Renta.  (*Id.* ¶¶ 30-32).  Sekosan then consulted with Tomar, who determined that Renta had committed "nine critical errors" over the previous two years, and, on May 22, 2003, suspended Renta from clinical duties and referred her to the PRC.  (Defs.' Stmt. ¶ 33; Pl.'s Stmt. ¶ 21.)

The PRC conducted an investigation that included interviews not only of Renta, Tomar, and Sekosan, but also of every attending pathologist in the Department of Pathology, each of which lasted an hour or more.  On September 9, 2003, the PRC recommended that Renta be allowed to return to her clinical duties immediately, but also that she undergo a period of observation regarding the accuracy of her diagnoses and counseling for her behavioral issues.  (Defs.' Stmt. ¶¶ 34-35; *see also* Pl.'s Stmt. ¶¶ 22, 25-26.)  Rachel Rubin presented the PRC's recommendation to the Executive Medical Staff ("EMS"), so that the EMS could consider the PRC's recommendations and make a recommendation regarding the proper discipline.  (Defs.' Stmt. ¶¶ 36-38.)  Defendants Tomar and Sekosan were both members of the EMS.  (*Id.* ¶ 37.)

The EMS recommended the revocation of Renta's medical staff membership and clinical privileges–the harshest penalty Rubin and an EMS member could remember the EMS issuing–due to Renta's unprofessional behavior and lack of professional competence.  (*Id.* ¶¶ 38-39; Pl.'s Stmt. ¶ 25).  This EMS member could not recall the EMS ignoring the PRC's recommendation in any other case (Defs.' Stmt. ¶ 27), and said that the EMS would ignore the PRC's recommendation only on the motion of an EMS member familiar with the circumstances of the case (*id.* ¶ 28).  Minutes of EMS meetings are normally kept, but none exist for the meeting at which the EMS recommended the termination of Renta's privileges.  (*Id.* ¶ 30.)  The entire EMS proceeding took one hour and forty-seven minutes.  (*Id.* ¶ 34.)

The EMS recommendation was then presented to a peer review hearing committee (the "PRHC") (*id.* ¶ 39), which heard over 50 hours of testimony regarding Renta spanning 16 days (*id.* ¶ 40).  During the PRHC hearings, Renta was afforded counsel and a full opportunity to present relevant evidence.  (Defs.' Stmt. ¶ 39.)

The PRHC determined that Renta had failed to meet her burden to show that the EMS's recommendation lacked a factual basis or was arbitrary, capricious, or unreasonable (*id.* ¶¶ 42-43), which Renta was required to prove even though no record (such as minutes) existed to document the EMS's recommendation.  On June 10, 2004, the EMS voted unanimously to reaffirm its recommendation, which was then forwarded to the Hospital's Joint Conference Committee, which concurred unanimously with the EMS.  (*Id.* ¶¶ 44-46.)  The recommendation was then forwarded the Cook County Board, which terminated Renta's medical staff membership and clinical privileges effective September 21, 2004.  (*Id.* ¶ 47.)

### III. LEGAL STANDARD

Summary judgment is warranted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Turner v. Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010); *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). In evaluating a defendant's motion for summary judgment, the court must first determine whether the defendant has demonstrated the absence of a genuine issue of material fact and so is entitled to judgment as a matter of law. *See Beard v. Banks*, 548 U.S. 521, 529 (2006). If the defendant has done so, the court next inquires whether the plaintiff has established a genuine issue of material fact regarding each of the elements of her case. *Id.*; *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). If not, then the court should enter judgment as a matter of law. *Beard*, 548 U.S. at 529.

### IV. ANALYSIS

Defendants argue that they are entitled to summary judgment on Renta's: (A) First Amendment retaliation claim (Count I); (B) race and gender discrimination claims (Counts II, III, IV, and V); (C) Title VII and § 1981 retaliation claims (Counts II and III); (D) claims insofar as they seek to impose *Monell* liability (Counts I, II, IV, and V); and (E) claims insofar as they seek to impose individual liability (Counts I, II, IV, and V).

**A.       First Amendment Retaliation Claim**

To survive summary judgment on a § 1983 claim of unlawful First Amendment retaliation, a public employee is required to put forth evidence presenting a triable issue of fact that: (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation as a result of her employer's action; and (3) the protected speech was the cause of the employer's action.  *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 500-01 (7th Cir. 2010).  Renta argues that she engaged in protected speech when she wrote and sent four letters to public interest and media organizations regarding various issues at the Hospital.  (*See* Pl.'s Ex. 13, 15, 16, 18.)  She further argues that Tomar received copies of each letter.  (*Id.*)  Finally, Renta argues that Tomar gave her two memoranda rebuking her for publicly airing her concerns regarding the Hospital. (*See* Pl.'s Ex. 14, 17.)

Defendants argue that Renta has not supported the admissibility of the letters she claims to have written or the memoranda she claims she to have received from Tomar.[4] In response to Renta's statements of additional facts that rely on the disputed exhibits, defendants argue that there is no indication that Renta ever mailed the letters she attaches as exhibits and further maintain that Tomar did not write the memoranda Renta submits. (*See* Defs.' Resp. ¶¶ 5-7, 16-18.)  In their motion to strike, defendants again contend that the disputed exhibits are inadmissible.  (Doc. 140 at 11-12.)  In support of their motion, defendants attach an affidavit from Tomar in which he avers that he never wrote the

---

[4]       Defendants also contend that they never received the documents during discovery.  Renta disputes this argument, contending that previous counsel (her current counsel is her third in this case) left her file in such disarray that her current counsel could not determine what documents had been produced earlier in discovery.  Renta contends that the documents were "likely produced" (Doc. 152 at 6), but concedes that she cannot confirm as much.  Ultimately, the court need not resolve this dispute, which concerns years-old discovery productions, because, even if Renta did produce the documents during discovery, she has failed to authenticate them here.

memoranda Renta offers, never received the letter Renta offers as having been copied to him, and had never seen any of the disputed documents before Renta produced them in response to defendants' motion for summary judgment. (*See* Doc. 140-2 at 2.) Given the opportunity to respond to defendants' motion to strike, Renta offers no affidavit or other evidence suggesting that she ever sent her letters, or that Tomar ever wrote the memoranda at issue.

To be admissible, documentary evidence must be supported by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Documents that are not authenticated are properly excluded, *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 722 (7th Cir. 2003), including at summary judgment, *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003) (citing 10A Charles A. Wright et al., Federal Practice & Procedure § 2722, at 379-80, 382-84 (1998)); *see also Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) ("When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence."). In this case, Tomar was deposed (Defs.' Ex. 4), as was Renta (Defs.' Ex. 3). Yet, Renta offers no affidavit or other evidence suggesting that she wrote or mailed the letters at issue, or that Tomar ever wrote the disputed memoranda. She also offers no testimony by either deponent referring to the disputed exhibits. Accordingly, Renta's exhibits 13 through 18 are stricken.

Without admissible evidence that she engaged in constitutionally protected speech or that Tomar was aware of any such speech, Renta's First Amendment retaliation claim fails. Defendants' motion for summary judgment is granted with respect to Count I.

**B.      Race, National Origin, and Gender Discrimination Claims**

Renta brings several discrimination claims, specifically: two claims of gender discrimination, pursuant to Title VII and § 1983; three claims of race discrimination, pursuant to Title VII, § 1983, and § 1981; and one claim of national origin discrimination, pursuant to Title VII.

Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may show illegal discrimination directly, or indirectly through the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Antonetti v. Abbot Labs.*, 563 F.3d 587, 591 (7th Cir. 2009). The same methods of proof apply to Renta's § 1981 claims, *see Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007), and her § 1983 claims, *see Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003).

In briefing, Renta makes clear that she seeks to prove each discrimination claim according to the indirect, *McDonnell Douglas* method of proof. (Doc. 130 at 9-11.) To survive summary judgment, the indirect approach first requires a plaintiff to establish that a genuine issue of material fact exists "that: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate performance expectations; 3) she suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). If a plaintiff is able to establish a prima facie case, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for taking the adverse action. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th

Cir. 2009). If the defendant offers such a reason, the burden shifts back to the plaintiff to show that the provided reason is merely a pretext for a discriminatory decision. *Id.* In other words, the plaintiff is required to show that the decision was dishonest, and not that the decision was inaccurate or unwise. *Id.* (citing *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)).

Defendants do not challenge that Renta is a member of a protected class (she is a female, Hispanic citizen) nor do they challenge that she suffered an adverse employment action. Rather, defendants challenge whether Renta was satisfactorily performing her job duties, and whether she was treated less favorably than similarly situated employees outside her protected classes.

1. Gender Discrimination

Defendants move for summary judgment on Renta's gender discrimination claims, which she asserts in Counts III and V pursuant to Title VII and § 1983, respectively.

a. Satisfactory Job Performance

In determining whether an employee was meeting her employer's expectations in her job performance, the court will look to the adequacy of the employee's performance at the time the employer took action against her. *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). The employee's credentials, experience, and previous evaluations may be relevant to the level of the employee's work, but those factors "cannot 'demonstrate the adequacy of performance at the crucial time when the employment action is taken.'" *Id.* (quoting *Fortier v. Ameritech Mobile Comms.*, 161 F.3d 1106, 1112 (7th Cir. 1998)).

Renta produces evidence that, after an extensive review, the PRC recommended that she be returned to duty immediately and observed for 2-3 months. (Pl.'s Stmt. ¶¶ 25-26.) Defendants argue that Renta had several documented instances of incompetence and therefore was not performing her duties satisfactorily. However, there is no indication that these asserted instances of incompetence were not before the PRC when the PRC recommended that Renta be returned to duty immediately, or that the PRC otherwise failed to consider Renta's performance at the time it recommended that she be returned to work. The PRC's recommendation creates a question of fact that, whatever the number of errors Renta committed, she was performing her job satisfactorily.

Defendants next argue that Renta agreed to be bound by the Hospital's Bylaws, which provided that the PRC's report and recommendation would be reviewed by the EMS. (Defs.' Stmt. ¶¶ 7-8.) According to defendants, the EMS's review of the PRC recommendation and decision to recommend termination conclusively establishes that Renta was not performing her job adequately. Defendants cite no legal authority for this argument, which the court finds unpersuasive. While the EMS's recommendation of termination may be relevant to whether Renta performed her job satisfactorily, it is not conclusive on that question, particularly in light of the PRC's contrary recommendation. A factual question exists as to whether Renta was performing her job adequately.

b. <u>Similarly Situated Individuals</u>

To satisfy the fourth element of her prima facie case, the plaintiff must identify a similarly situated employee outside of her protected class that her employer treated more favorably. *See Antonetti*, 563 F.3d at 591-92. All relevant factors are considered in deciding whether an individual may be used for comparison for the purpose of a similarly

situated employee, "including whether the employee (1) held the same job description; (2) was subject to the same standards; (3) was subordinate to the same supervisor; and (4) had comparable experience, education, and other qualifications." *Dear*, 578 F.3d at 610 (citing *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)). The plaintiff must show that her comparator also engaged in the type of conduct that was material to the employer's action against the plaintiff. *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005) ("[T]he other employees must have engaged in similar-not identical-conduct to qualify as similarly situated.").

Here, Renta points to five male pathologists whom, she contends, were similarly situated to her and more favorably treated. Given that all comparators were, like Renta, pathologists, and therefore also under Tomar's supervision, they all appear to be sufficiently comparable. Each of these pathologists, according to Renta's affidavit, committed similar errors to those she committed, but were not referred to the PRC, suspended, or otherwise sanctioned.

As defendants assert, Renta did not include these comparators in her statement of additional facts, and does not cite her statement of additional facts in her argument that the five comparators are in fact comparable and were more favorably treated. Rather, Renta cites directly to her affidavit, in which she identifies five pathologists that she asserts committed similar errors to those she committed. Defendants ask the court to disregard these comparators because Renta failed to include them in her statement of additional facts.

Renta's practice of citing in her brief directly to evidence for propositions not contained in her statement of facts is improper. However, the court declines to disregard

Renta's comparators.  Defendants do not explain what prejudice they suffer by virtue of the court's consideration of the comparators.  Specifically, defendants put forth no facts or argument suggesting that the persons in question are not meaningful comparators, or committed errors less serious than those committed by Renta.  Therefore, even if the court required Renta to list these comparators in additional statements of fact, then required defendants to respond, Renta's affidavit still would create a genuine issue of material fact as to whether similarly situated male pathologists were treated more favorably.

Moreover, there is no indication that defendants are unfairly surprised by Renta's comparators.  Despite deposing Renta (Defs.' Ex. 3), defendants point to no part of her deposition transcript (or responses to written interrogatories) in which they asked her to identify her comparators.  Finally, while the prejudice to defendants in declining to strike Renta's comparators is slight, striking Renta's comparators would be fatal to her gender discrimination claim.

Defendants also assert that Renta's affidavit cites no admissible evidence supporting the "critical errors" committed by the comparators she identifies in her affidavit.  However, for each error, Renta provides a date, a corresponding number, apparently of the record of the error, and a description of the error.  Moreover, while defendants question the basis of Renta's knowledge of these errors, she avers that she became aware of the errors in preparing for presentations that she made regarding diagnoses.

In sum, the five comparators identified in Renta's affidavit create a genuine issue of material fact regarding whether male pathologists similarly situated to Renta were treated more favorably.[5]

### c. Legitimate, Non-Discriminatory Reason & Pretext

In reply, defendants briefly assert that Renta "has not put forth any evidence that she did not commit the errors demonstrating her incompetence," and cite Seventh Circuit case law stating that when the plaintiff makes out her *prima facie* claim of discrimination via the indirect method, then "the burden of production shifts to [the defendant] to offer a permissible, nondiscriminatory reason for the adverse employment action." *McGowan*, 581 F.3d at 579.

Defendants' argument in this regard is underdeveloped. Defendants argue that the County Board eventually terminated Renta, and that it had a legitimate, non-discriminatory reason for doing so: Renta's record of errors. However, defendants' argument fails to address the so-called "singular influence" (or "cat's paw") theory of liability. *See Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009). Under this theory, the discriminatory or retaliatory animus of an employee who is not the ultimate decision-maker but who has influence over the decision-maker may be imputed to the employer. *See Kodish*, 604 F.3d at 508-09. The Seventh Circuit has declined to define further the requisite degree of influence. *Id.* (collecting cases and noting inconsistency in required degree of influence). In a previous case in which the County was a defendant,

---

[5] However, the court declines to credit the testimony of Susanne Klein, the director of quality assurance at the Hospital, as further evidence of similarly situated pathologists. Klein testified that she knew of three or four cases from the department of pathology that involved errors like those Renta was found to have committed. (Pl.'s Ex. 9, at 14:16-15:16.) But Klein's testimony does not indicate whether the cases she refers to involved male or female pathologists, or whether any pathologist who committed the errors was disciplined. These anonymous pathologists are not meaningful comparators.

the court of appeals found that the County could not avoid Title VII liability for its supervisor's discriminatory animus "simply because Cook County employed a final administrative step" before the action, particularly where the supervisor "triggered the termination hearing, selected the hearing officer, and provided information critical to the termination decision." *Phelan v. Cook County,* 463 F.3d 773, 783-84 (7th Cir. 2006); *see also Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 848-49 (7th Cir. 2008) (citing *Phelan* and discussing "cat's paw" theory).

In this case, sufficient evidence of Tomar's and Sekosan's influence in Renta's termination precludes a finding that, as a matter of law, the County terminated Renta for legitimate, non-discriminatory reasons. A triable issue of fact exists that Tomar and Sekosan acted with discriminatory animus in suspending Renta, referring her to the PRC and participating in the EMS session against her. The degree of Tomar's and Sekosan's influence within the EMS, particularly given their familiarity with the facts of Renta's case, appears to have been disproportionate to other EMS members' influence. After Tomar and Sekosan participated in the EMS session, which lasted less than two hours and of which no record exists, the EMS recommended Renta's termination.

From the EMS, Renta's case proceeded to the PRHC. While the PRHC hearings themselves provided Renta with some process, both Tomar and Sekosan participated in the hearings. Moreover, the EMS recommendation, which Tomar and Sekosan influenced, lingered over the PRHC hearings in two ways. Renta's burden in the PRHC hearings was to overcome the EMS committee's recommendation by clear and convincing evidence, even though Renta had no record of the EMS deliberations. Also, Tomar and Sekosan presented the EMS's case before the PRHC. (Defs.' Ex. 26, at 72-

73.)  After the PRHC affirmed the EMS's recommendation, the entire EMS–Tomar and Sekosan included–reviewed and discussed a brief from Renta and unanimously reaffirmed its recommendation to terminate Renta.  (Defs.' Ex. 32.)  Without these recommendations, neither the Joint Conference Committee nor the Board would have reviewed the recommendation to terminate Renta.

On the present record, the court cannot conclude that Renta's termination was free from discrimination, particularly given: Tomar's and Sekosan's participation at every step of the disciplinary process for which the present record indicates meaningful review occurred; EMS members' acknowledgement of Tomar's and Sekosan's disproportionate influence in the EMS deliberations; Tomar's and Sekosan's representation of the EMS before the PRHC; and the seemingly cursory review given by the Joint Conference Committee and the Board.

Defendants' motion for summary judgment on Renta's gender discrimination claims is denied.

### 2.  Race Discrimination

Defendants also move for summary judgment on Renta's race discrimination claims, which she asserts in Count II pursuant to § 1981, in Count III pursuant to Title VII, and in Count IV pursuant to § 1983.  As described above with regard to Renta's race discrimination claim, a material question of fact exists regarding whether Renta was performing her job satisfactorily.  The remaining question is whether Renta has identified any similarly situated non-Hispanic comparators that were treated more favorably than she was.

"Without a similarly situated employee, [a plaintiff] cannot present a prima facie case and [her] claim must fail."  *See Antonetti*, 563 F.3d at 591-92.  As discussed above, Renta produced five comparators, each of whom she identifies as male, but none of whom she identifies as non-Hispanic.  However, one of the comparators is defendant Sekosan, who, the parties agree in their statement of facts, is Caucasian.  (Defs.' Stmt. ¶ 4.)  Thus, Renta has one non-Hispanic comparator who, based on her affidavit, was treated more favorably than she was.

The present record reveals genuine issues of material fact regarding each element of Renta's *prima facie* race discrimination claim.  As with Renta's gender discrimination claim, defendants have not rebutted Renta's *prima facie* race discrimination claim by establishing, as a matter of law, that they had legitimate, non-discriminatory reasons for suspending then terminating Renta.  Accordingly, defendants' motion is denied with respect to Renta's race discrimination claims.

      3.  <u>National Origin Discrimination</u>

In reply, defendants argue that Renta has failed to produce evidence that she was discriminated against due to her national origin, which she alleges as part of her Title VII discrimination claim in Count III.  However, defendants failed to argue the insufficiency of Renta's national origin discrimination claim in their motion, and thereby waived the argument.  *Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009).  Defendants' motion for summary judgment is denied with respect to Renta's national origin discrimination claim.

**C.       Section 1981 and Title VII Retaliation Claims**

In Counts II and III, Renta asserts claims for retaliation pursuant to § 1981 and Title VII, respectively.  Renta maintains that she engaged in protected conduct when she filed an EEOC charge on February 28, 2003 complaining of gender and national origin discrimination.  (Defs.' Stmt. ¶ 26.)  Renta further maintains that Tomar retaliated against her on May 22, 2003, when he placed her on suspension from clinical duties and referred her to the PRC.  (*Id.* ¶ 33.)

Seventh Circuit precedent teaches that the analysis for retaliation claims, whether brought under § 1981 or Title VII, is identical, *see Humphries*, 474 F.3d at 403-04, except on the issue of administrative exhaustion, as explained within.  As with discrimination claims, a plaintiff may prove retaliation directly or indirectly. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006).  Defendants contend that Renta failed to exhaust her administrative remedies with respect to her retaliation claims and has failed to present sufficient evidence to support those claims, whether considered under the direct or indirect method.  The court considers each argument in turn.

1.       Timeliness

Defendants first contend that Renta's retaliation claims are untimely for failure to file an administrative charge within the time permitted under Title VII.  This argument fails with respect to Renta's § 1981 retaliation claim because administrative exhaustion is not a prerequisite to a suit brought under § 1981, unlike suits brought under Title VII. *See Fane*, 480 F.3d at 539 ("Whether Fane exhausted her Title VII claims is immaterial,

however, because Fane also sued under § 1981, which does not require a plaintiff to bring an EEOC charge before filing a claim in federal court.").

Title VII requires plaintiffs to file a charge with the EEOC or the appropriate state agency within 300 days of the allegedly discriminatory act. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). Generally, a plaintiff can base her Title VII suit only on conduct occurring within the 300-day limitations period. *Id.* (citing *Galloway v. Gen. Motors Serv. Parts Oper.*, 78 F.3d 1164, 1166 (7th Cir. 1996)). However, the limitations period is subject to an exception known as the "continuing violation doctrine." *Id.* This doctrine allows "a court to consider acts that occurred outside the limitations period if related closely enough to the acts occurring within the established time frame to be considered one ongoing violation." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 n.4 (7th Cir. 2009) (quoting *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999)) (internal quotation marks omitted). The Seventh Circuit has stated that the purpose of the doctrine "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Village of Lemont* (*Limestone*), 520 F.3d 797, 801 (7th Cir. 2008); *see also Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1012 (7th Cir. 2003) ("[T]he continuing violation concept is reserved for theories of liability that depend on the cumulative impact of numerous individual acts, none of which is necessarily actionable in itself.").

Defendants assert that Renta's March 2005 EEOC charge cannot support her May 2003 suspension because the suspension preceded the charge by more than 300 days. Renta responds that her injury began with her May 2003 suspension and continued

through the EMS's September 2003 recommendation that she be terminated and her September 2004 termination by the County Board. Renta contends that these steps in the disciplinary process constitute one continuing violation. Based on the Seventh Circuit precedent cited above, whether the continuing violation doctrine applies to Renta's claims depends on whether her May 2003 suspension was actionable. If so, Title VII permitted her 300 days beginning on May 22, 2003 in which to file suit. If not, then Renta could wait to file an EEOC charge until 300 days after a materially adverse action.

Neither the present record nor the parties' briefs clarify a number of issues that are critical to resolve the timeliness of Renta's EEOC charge. First, the parties point to no evidence regarding the nature of Renta's suspension. The question of whether a suspension constitutes a materially adverse action is generally one for the jury. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72-73, 126 S. Ct. 2405 (2006); *see also Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002). Suspensions that are not actionable include those that are never served, *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005), and, in some cases, suspensions with pay, *Myart v. Doubletree Hotels*, No. 01 C 4083, 2002 WL 63814, at *5 (N.D. Ill. Jan. 17, 2002). In this case, defendants cite no evidence suggesting that Renta's suspension was not actionable; Renta, for her part, cites no evidence definitively establishing that the suspension was actionable. Rather, both parties cite inconclusive evidence and make inconsistent arguments regarding the nature of the suspension. Consequently, the court cannot conclude whether Renta suffered an actionable injury in May 2003.

Regardless of whether Renta suffered an actionable injury in May 2003, she may have suffered such an injury later, when Tomar participated in the September 2003

proceedings, or in the PRHC hearings that followed. The evidence of the nature of Tomar's participation in the EMS session on September 9, 2003, and in the PRHC proceedings that followed, is unclear, but suggests that Tomar participated in those proceedings and had disproportionate influence on other EMS members. Such participation may have been new retaliatory actions, or retaliatory actions that, with Renta's May 2003 suspension, constitute a continuing violation. But based on the parts of the present record cited by the parties, which lack detail regarding Tomar's participation in Renta's disciplinary proceedings, and the parties' briefs, which fail to analyze meaningfully the application of the continuing violation doctrine to this case, the court cannot reach any such conclusion as a matter of law.

Finally, the parties have not presented evidence regarding the nature of the Board's review of the EMS's recommendation, or of the review by the Hospital's Joint Conference Committee, which affirmed the EMS's recommendation to terminate Renta before forwarding the matter to the Board. Without more detail regarding the nature of Renta's suspension, Tomar's participation in EMS proceedings, or the review by the PRHC, the Joint Conference Committee, and the Board, the court cannot discern whether Renta's Title VII retaliation claim is untimely.

2.     <u>Direct Method</u>

Defendants also argue that Renta has failed to adduce sufficient evidence to support her retaliation claims. Under the direct method of proving retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she suffered from an adverse employment action; and (3) the employer's action was caused by her activity. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). There is no dispute that

Renta's February 2003 EEOC charge constituted protected activity. *Accord Tomanovich*, 457 F.3d at 663. Rather, the parties dispute whether Renta suffered an adverse employment action and whether any such action was caused by her EEOC charge.

a. Adverse Employment Action

Defendants contend that Tomar's May 22, 2003 referral to peer review was not an adverse employment action, and Renta does not contend as much. *Accord Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754-55 (7th Cir. 2002). Instead, Renta argues that her suspension, also on May 22, 2003, removal from conferences at which she planned to be a presenter, and eventual termination constitute adverse employment actions. (Doc. 130 at 12-13.) As discussed above in regard to the timeliness of Renta's claims, whether a suspension constitutes a materially adverse employment action is generally a jury question and, on the present record, the court cannot conclude otherwise.

b. Causation

Defendants also argue that Renta cannot show that any adverse action against her was caused by her protected speech. To do so, she must "construct[] a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 751 (7th Cir. 2009). In contesting causation, the parties focus on three dates: (i) a February 27, 2003 memorandum from a Hospital pathologist to Sekosan, copying Renta, that complains of Renta's unprofessional conduct; (ii) Renta's February 28, 2003 EEOC charge; and (iii) Tomar's May 22, 2003 memorandum recommending her suspension.

The first question is whether the three months between Renta's charge and Tomar's memorandum constitute "suspicious timing." The Seventh Circuit has

acknowledged that "suspicious timing is . . . often an important evidentiary ally of the plaintiff." *Culver*, 416 F.3d at 546. Defendants advance no argument that two events three months apart are not sufficiently proximate to be suspicious, and at least one district court decision has denied summary judgment based in part on a three-month gap between protected conduct and adverse action. *Weathersby v. Astra USA, Inc.*, No. 1:08-cv-615-LJM-TAB, 2010 WL 1088673, at *12-*13 (S.D. Ind. Mar. 19, 2010).

Of course, as defendants contend, the Seventh Circuit "has held repeatedly that temporal proximity alone is not sufficient to withstand summary judgment." *Daugherty*, 577 F.3d at 751 (collecting cases). However, Renta also produces evidence creating at least a triable issue that Tomar knew of the EEOC charge when he suspended Renta pending a referral to the PRC. (Pl.'s Stmt. ¶ 20.)[6] "When an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element of the *prima facie* case is typically satisfied." *Culver*, 416 F.3d at 546.

Defendants also argue that any questions of timing should be construed against, rather than in favor of, Renta. Renta filed her EEOC charge on February 28, 2003, one day after another Hospital doctor drafted a memorandum to Sekosan, copying Renta, complaining of Renta's conduct. According to defendants, the suspicious timing suggests Renta's EEOC charge was a fabricated response to a colleague's complaint. This argument misconceives the standard at summary judgment, at which the court draws

---

[6] The court notes defendants' objection to Renta's statement of fact that Tomar knew of her February 2003 EEOC charge. The underlying evidence consists of testimony in which Tomar testified that "it was disruptive to me that she filed the suit." (Pl.'s Stmt. ¶ 20.) This suggests that he was aware of "the suit." A reading of his testimony in the light most favorable to Renta suggests that, by referring to a "suit," he may have been referring to the EEOC charge, meaning that he was aware of the EEOC charge. Defendants produce no evidence to the contrary, instead relying on evidence of Renta's knowledge of Tomar's knowledge of the EEOC charge, which is irrelevant to whether Tomar knew of the EEOC charge.

all reasonable inferences in the non-movant's favor. With inferences properly drawn in her favor, Renta has established a factual question as to each element of her Title VII and § 1981 direct retaliation claims, and summary judgment on those claims is improper.

### 3. Indirect Method

However, should this case proceed to trial, Renta will not be able to prove her retaliation claim indirectly. Under the indirect method, the plaintiff must show, *inter alia*, that she was treated less favorably than similarly situated employees who did not engage in a similar statutorily protected expression. *Tomanovich*, 457 F.3d at 663. In this case, Renta's proffered evidence does not indicate whether her asserted comparators engaged in statutorily protected activity. Therefore, Renta cannot proceed with her Title VII and § 1981 retaliation claims by the indirect method.

## D. The County's Liability Under § 1981 and § 1983

Defendants also move for summary judgment on the ground that defendant County cannot be held liable under § 1981 and § 1983. The Seventh Circuit recently stated the standard for municipal liability in § 1981 and § 1983[7] cases as follows:

> A village or other municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). . . . To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused "by (1) the enforcement of an express policy of the [village], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chicago,* 250 F.3d 502, 504 (7th Cir.2001) (citing *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir.2000)).

---

[7]    Section 1983 provides the exclusive remedy for § 1981 claims when the defendant is a state actor, and therefore, a § 1981 claim of municipal liability will follow the same analysis as a § 1983 claim. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S. Ct. 2702 (1989); *see also Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1148 (7th Cir. 1999) (citing *Fed'n of African Am. Contractors v. Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996)) (concluding that this aspect of *Jett* remains good law after the Civil Rights Act of 1991).

*Wragg v. Village of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2010) (alteration supplied); *see also Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010).

Renta argues that even though Tomar and Sekosan were responsible for Renta's suspension and referral to the PRC, the Hospital's Bylaws "did not bar[] or suggest" that they not participate in the closed EMS session at which Renta's termination was recommended. According to Renta's reasoning, Tomar and Sekosan, who accused Renta of wrongdoing, had an interest in the outcome of the EMS session, and their participation in the EMS session created a conflict between that interest and their duties to the EMS.

The Bylaws, which, as Renta asserts, are an express policy of the Hospital, permit supervisors who accuse a doctor of wrongdoing to vote as EMS members against the doctor, and thereby permit supervisors to act upon discriminatory and retaliatory motivations they may have. However, the enforcement of the Bylaws does not mandate discrimination or retaliation. *Wragg*, 604 F.3d at 467-68. As the Supreme Court stated in *Monell*, "it is when *execution of a government's policy* or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694 (emphasis added). In this case, the execution of the Bylaws did not inflict Renta's constitutional deprivations; rather, the Bylaws permitted Tomar and Sekosan to inflict the injuries in question. The present record indicates that "the moving force of the constitutional violation," *id.*, if any, was the conduct of the individual defendants, and not the County's Bylaws.

Renta does not assert that the other bases for *Monell* liability apply here. Specifically, she does not argue and points to no evidence that the County, or even the

Hospital, had a widespread or well-settled practice of tolerating retaliation or discrimination based on race or gender. *See Valentino*, 575 F.3d at 675 (affirming that plaintiff had failed to establish that a municipal defendant had "condoned a continual practice of terminating employees " based on employees' exercise of First Amendment rights). In fact, Renta refers to no other instances in which other Hospital or County employees suffered retaliation or race or gender discrimination. Nor does Renta produce evidence that in any previous case, a supervisor discriminated or retaliated against a Hospital doctor because the Bylaws permitted him to do so, or that the Hospital was aware of any such discrimination or retaliation. Finally, Renta does not assert that Tomar or Sekosan had final policy-making authority, and does not put forth any evidence of their authority. *Id.* at 676.[8]

Renta puts forth no evidence that enforcement of the Bylaws caused her constitutional deprivations, that retaliation and discrimination were "so permanent, well-settled, and widespread as to constitute a custom or usage," or that Tomar and Sekosan had final policy-making authority. She is left with what amounts at best to "one-time negligen[ce] . . . peculiar to" her. *Wragg*, 604 F.3d at 468 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-08 (1997) (alteration and ellipses supplied)). Such negligence is insufficient for *Monell* liability to attach. *Id.*; *Daniels v. Williams*, 474 U.S. 327, 328, 330 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Because Renta has failed to establish the existence of a genuine issue of material fact regarding the

---

[8] Renta also does not argue that the "cat's paw" theory of liability, which applies in the Title VII context as discussed above, applies to impute any discrimination by Tomar and Sekosan to the County pursuant to § 1983 and § 1981. The Seventh Circuit has expressed reservations regarding this theory as applied to such claims. *See Waters v. City of Chicago*, 580 F.3d 575, 586 n.2 (7th Cir. 2009).

County's *Monell* liability, Defendants' motion for summary judgment is granted insofar as Renta seeks to assert § 1981 and § 1983 claims against the County.

**E.      Individual Liability Under § 1981 and § 1983**

Last, defendants argue that Renta has not raised a triable issue regarding Tomar's and Sekosan's individual liability, which Renta asserts pursuant to § 1981 and § 1983. For an individual defendant to be liable under § 1981 and § 1983, he must have directly caused or participated in the constitutional violation. *Hildebrandt*, 347 F.3d at 1039.  A supervisor may be held liable if he knew about the action or conduct giving rise to the deprivation and consented to its continuation through approval, encouragement, facilitation, or by "turn[ing] a blind eye." *Id.*

As described in regard to Renta's § 1981 retaliation claim above, a factual question exists regarding whether Tomar, in suspending Renta, caused an actionable injury, and whether he knew of Renta's EEOC charge when he suspended her.  If Tomar retaliated against Renta by suspending her, he may be liable individually under § 1981. However, Renta has produced no evidence that Sekosan was aware of Renta's EEOC charge, eliminating any basis for holding him liable for retaliation against Renta.

Both Tomar and Sekosan may be liable individually for Renta's § 1981 and § 1983 discrimination claims.  An affidavit from Tomar establishes that he decided to suspend Renta, and suggests that Sekosan participated in marking the decision.  Further, what little evidence is available regarding the EMS session establishes that Tomar and Sekosan were EMS members, participated in the EMS session that resulted in its recommendation that Renta be terminated, and participated in the PRHC proceedings against Renta.  Sufficient indirect evidence exists to support Renta's claim that they took

such actions with discriminatory intent.  If so, they may be liable individually for discrimination.  Thus, Sekosan is granted summary judgment insofar as Renta seeks to bring retaliation claims against him, and the individual defendants are otherwise denied summary judgment.

## V.  CONCLUSION

For the reasons stated above, defendants' motion to strike is granted in part and denied in remaining part, and defendants' motion for summary judgment is granted in part and denied in remaining part.  Defendants' motion is granted on: Counts I in its entirety; Counts II, IV and V to the extent that Renta seeks to impose *Monell* liability on the County; and Count II to the extent that Renta seeks to hold Sekosan liable for retaliation.  Defendants' motion is denied in all remaining respects.

ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 19, 2010