UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIVIAN J. RENTA, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 2995 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COUNTY OF COOK, RUSSELL TOMAR, M.D., individually, and MARIN SEKOSAN, M.D., individually, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vivian Renta, formerly a pathologist at John H. Stroger, Jr. Hospital of Cook County, alleges in this lawsuit that she suffered adverse employment actions and ultimately dismissal due to discrimination and retaliation by her former supervisors, Defendants Russell Tomar and Marin Sekosan, and her former employer, Defendant County of Cook. In an opinion and order issued last year, familiarity with which is assumed, the court granted summary judgment against Renta on her First Amendment retaliation claim under 42 U.S.C. § 1983, to Cook County on Renta's *Monell* claims under 42 U.S.C. §§ 1981 and 1983, and to Sekosan on Renta's § 1981 retaliation claim. The court denied summary judgment on Renta's gender, race, and national origin discrimination claims against all Defendants under Title VII and §§ 1981 and 1983, on her § 1981 retaliation claim against Tomar, and on her Title VII retaliation claim against Cook County. *See* 2010 WL 3365942 (N.D. Ill. Aug. 19, 2010) (Gottschall, J.).

Invoking Fed. R. Civ. P. 59(e), Defendants have moved for reconsideration of the order insofar as it denied summary judgment. The only submission requiring extended discussion is

Defendants' argument that they were unfairly disadvantaged by the court's failure to enforce Local Rule 56.1 with respect to evidence submitted by Renta on her race, gender, and national origin discrimination claims. Renta seeks to prove discrimination under the indirect *McDonnell Douglas* method, one element of which is that "'other similarly situated employees who were not members of the protected class were treated more favorably.'" 2010 WL 3365942, at *6 (quoting *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007)). Renta's summary judgment opposition brief identified several comparators. *See* Doc. 130 at 10-11. For support, the brief directly cited Renta's affidavit, not her Local Rule 56.1 statement of additional facts; in fact, Renta's Local Rule 56.1 statement (Doc. 131) did not reference the comparators at all. *See* 2010 WL 3365942, at *8. The court's summary judgment opinion acknowledged that this was procedurally improper, but declined Defendants' invitation to disregard the comparators, reasoning that Defendants "do not explain what prejudice they suffer by virtue of the court's consideration of the comparators," that Defendants "put forth no facts or argument suggesting that the persons in question are not meaningful comparators, or committed errors less serious than those committed by Renta," and that "while the prejudice to defendants in declining to strike Renta's comparators is slight, striking Renta's comparators would be fatal to her gender discrimination claim." *Ibid*.

In seeking reconsideration, Defendants contend that they did not specifically address Renta's comparators because they assumed, based on prior rulings from the Northern District of Illinois, that the court would not consider comparators that Renta's Local Rule 56.1 statement failed to reference. *See*, *e.g.*, *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"); *Malec v. Sanford*, 191 F.R.D. 581, 583

(N.D. Ill. 2000) ("supporting documents submitted with a motion that are not referred to in the statement of facts will be ignored"); *Kaplan v. City of Chicago*, 2004 WL 2496462, at *2 (N.D. Ill. Nov. 4, 2004); *Parsons Tanning Co. ex rel. Weinstein v. Schwartz*, 2004 WL 1593909, at *1 (N.D. Ill. July 15, 2004). The court's decision to excuse Renta's noncompliance, Defendants assert, was unexpected and deprived them of the opportunity to submit evidence and argument to rebut Renta's factual and legal claims regarding the comparators. Defendants include such evidence and argument in their reconsideration motion.

At the threshold, Renta maintains that Defendants may not introduce new evidence in a reconsideration motion, noting that Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and … does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Renta's contention is unpersuasive. Defendants seek not to avoid their own procedural failures, but only to remedy the prejudice they suffered from Renta's procedural failures. And because Defendants' assumption that the court would enforce Local Rule 56.1 was not unreasonable, it cannot be said that their summary judgment papers "could and should have" presented evidence and argument regarding the comparators.

Accordingly, Defendants' motion is appropriate to the limited extent that is presents such evidence and argument. Considering Defendants' materials and Renta's substantive response thereto, the court concludes that Renta has failed to adduce evidence showing that similarly situated employees outside her protected classes were treated more favorably than she. Accordingly, Defendants are entitled to summary judgment on Renta's gender, race, and national origin discrimination claims.

### A. Gender Discrimination Claims

To prove that she was similarly situated to an employee outside the protected class, a plaintiff "normally" must show "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000); *see also Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 479 (7th Cir. 2010). The plaintiff's showing must establish that the employees were similarly situated in all material respects. *See Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). "In determining whether two employees are similarly situated the court must look at all relevant factors … ." *Radue*, 219 F.3d at 617.

Renta's comparators for her gender discrimination claim are five male pathologists: Defendant Sekosan, Gerardo Fronda, Ephraim Axelrod, Bourke Firfer, and John Kennedy. Renta contends that those pathologists were not disciplined or terminated even though they committed diagnostic errors similar to the nine errors that preceded Renta's suspension, peer review, and dismissal.

It is doubtful that Defendant Sekosan is an appropriate comparator. As Director of Anatomical Anthology in the Department of Pathology, Sekosan was among Renta's supervisors, and settled law holds that supervisors generally are not similarly situated to their subordinates. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *Connolly v. Ala Carte Entm't, Inc.*, 2002 WL 31248497, at *5 (N.D. Ill. Oct. 7, 2002). In any event, all five male comparators—Sekosan and the four others—are not similarly situated

because Renta has failed to present evidence showing that they committed actual diagnostic errors with nearly the same frequency as she did.

Renta's affidavit asserts that Fronda and Sekosan committed five diagnostic errors comparable to hers, that Axelrod and Firfer committed four, and that Kennedy committed one. Defendants respond, supported by Sekosan's affidavit, that with one exception (a misdiagnosis by Axelrod), the errors Renta attributes to her comparators were not "errors" at all. Instead, Sekosan explains, the comparators' initial diagnoses were revised or modified after Intradepartmental Consensus Conferences, Interdepartmental Treatment and Planning Conferences, or consultations with outside physicians—approved procedures in which multiple doctors are consulted to reach consensus on diagnosis and/or treatment in difficult cases. In those instances, Sekosan avers, the hospital's ordinary consultative processes have been followed and the revision cannot be characterized as the correction of an "error." By contrast, Sekosan states, the nine errors that led to Renta's peer review, suspension, and termination were discovered through the quality assurance process, such as during postoperative biopsies or when other physicians caught an incorrect diagnosis. As the court's summary judgment opinion noted in articulating the undisputed facts:

> In May 2003, while conducting a random quality assurance review of pathology cases, Sekosan and two other pathologists uncovered a misdiagnosis made by Renta. Later that same month, Sekosan uncovered another misdiagnosis by Renta. Renta then consulted with Tomar, who determined that Renta had committed "nine critical errors" over the previous two years, and, on May 22, 2003, suspended Renta from clinical duties and referred her to the [Peer Review Committee].

2010 WL 3365942 , at *3 (citations omitted); *see also id*. at *2 (deeming admitted paragraphs 29-32 and 35 of Defendants' statement of undisputed facts, which summarized certain of Renta's diagnostic errors).

-5-

Renta does not (and could not) dispute the summary judgment opinion's statement that "nine critical errors" preceded the suspension and peer review process that resulted in her dismissal. Nor does Renta dispute Defendants' contention that those nine errors were discovered through quality assurance and not through the approved consultative processes described above. And Renta expressly admits that "[m]ost of the errors" she attributes to the male comparators "were not discovered as a part of quality assurance, but instead through conferences discussing diagnosis and treatment." Doc. 131-8 at 7, ¶ 26; *see also* Doc. 130 at 11 (acknowledging that the "critical errors" Renta attributes to her male comparators "are based simply on Dr. Renta's own practice in the department and on various conferences as the OB/GYN oncology conference, the breast conference, and the tumor board, and are without the benefit of data derived from quality assurance protocols") (citations omitted). Renta has identified only two exceptions—the one error by Axelrod acknowledged by Defendants, and an ovarian cancer case involving Sekosan, Axelrod, and Fronda where Renta adduces a genuine dispute over whether there was an actual misdiagnosis or a proper consultation. *See* Doc. 174-1 at 3-5, ¶ 6(c); *id.* at 8-9, ¶ 7(c); *id.* at 11-12, ¶ 8(c).[1]

Defendants are not seeking summary judgment on the ground that the five male comparators' diagnoses were correct while Renta's were incorrect. Rather, they seek summary judgment on the ground that the comparators, but not Renta, followed approved consultative

---

[1] Renta's brief contends that Sekosan's affidavit addresses "fewer than half the alleged errors" that she identified. Doc. 174 at 11. However, as Defendants explain, Sekosan addressed all the errors Renta attributed to the male comparators. *See* Doc. 176 at 8 n.2. Renta's brief also disputes Sekosan's averment that the intradepartmental and interdepartmental conferences were forums in which multiple doctors are consulted to reach consensus on diagnosis and/or treatment in difficult cases. *See* Doc. 174 at 14-15. However, Renta fails to cite any evidence supporting her view, so she has failed to create a genuine dispute over the nature of those conferences. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

processes when confronted with difficult cases in which their initial inclinations might be (and were) incorrect. As noted, Renta does not dispute that she failed to follow those processes on nine occasions,[2] while her comparators (resolving all genuine factual disputes in her favor) did so only twice (Axelrod), once (Sekosan and Fronda), or not at all (Firfer and Kennedy). This distinction significant enough to defeat Renta's contention that she is similarly situated to any male comparator for purposes of a *McDonnell Douglas* analysis. *See Naik*, 627 F.3d at 600 (employee failed to identify similarly situated comparator who violated company policy and was not terminated); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (holding that employee failed to satisfy similarly situated requirement where "there is absolutely nothing in the record to suggest that any [alleged comparator] violated the [employer's] overtime policy—*at all*, much less repeatedly"); *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (holding that plaintiff was not similarly situated to another employee with far fewer

---

[2] In fact, it would appear that in three cases Renta's "error" was discovered through a consensus process initiated by Renta (*see* Doc. 114-12 at 27-29, ¶¶ 2-3, 9), while in one other case Renta's view during a consensus process was rejected (*see id.* at 28-29, ¶ 6). This suggests, perhaps, that only five of Renta's nine errors were discovered outside the approved consultative process. However, by failing to press this argument, Renta has forfeited it. *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [plaintiff] lost the opportunity to urge it in both the district court and this court."); *see also Wallace v. McGlothan*, 606 F.3d 410, 425 (7th Cir. 2010) ("Issues and arguments not raised before the district court are deemed forfeited on appeal, and we review them only for plain error, which is rarely applied in civil cases.") (internal quotation marks omitted); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008) ("it is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal"). The argument would have made no difference in any event. In two of the instances where Renta's "error" was discovered through a consensus process, Renta did not acknowledge her initial mistake or change her diagnosis. *See* Doc. 114-12 at 27-28, ¶¶ 2-3. Moreover, regardless of whether Renta committed five, six, seven, eight, or nine errors, no comparator even arguably had more than two—and, as discussed below, it is undisputed that no comparator had the collegiality and professionalism problems that Renta displayed.

performance complaints); *Radue*, 219 F.3d at 618-19 (holding that plaintiff was not similarly situated to comparator who did not have similar job performance problems).

To the extent any doubt remains, the material distinction between Renta and the male comparators is confirmed by a closely related set of undisputed facts. As Defendants maintained (*see* Doc. 114-2 at 12) and as the court found undisputed in its summary judgment opinion (*see* 2010 WL 3365942, at *3), Renta was abrasive and disrespectful to her colleagues and was the subject of numerous complaints that she had breached hospital professionalism protocols. Renta, however, failed to contend that any comparator had similar problems concerning professionalism or their interactions with colleagues. *See* Doc. 130 at 10-12. When considered together with Renta's numerous failures to engage in the consultative processes described above, Renta's lack of professionalism and collegiality provides additional support for holding that she is not similarly situated to any male comparator. *See Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 682-83 (7th Cir. 2007) (summary judgment affirmed because employee known as being problematic, abrasive, and insensitive was not similarly situated to other employees did not have those problems); *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007) (summary judgment affirmed because plaintiff adduced no evidence that comparator had similar problem getting along with coworkers).

In sum, Renta has not satisfied her burden of showing that a similarly situated male pathologist was treated more favorably than she was. Defendants therefore are entitled to summary judgment on Renta's gender discrimination claims. *See Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009) ("Without a similarly situated employee, [a plaintiff] cannot present a prima facie case and [her] claim must fail.")

B.  **Race and National Origin Discrimination Claims**

The court noted in its summary judgment opinion that Defendant Sekosan is the only non-Hispanic or non-Puerto Rican comparator identified by Renta. *See* 2010 WL 3365942, at *10. As shown above, Sekosan is not similarly situated to Renta for purposes of *McDonnell Douglas*. Accordingly, Defendants are entitled to summary judgment on the race and national origin discrimination claims as well.

C.  **Statutory Retaliation Claims**

Defendants contend that the court's summary judgment opinion misapprehended the law and facts on Renta's statutory retaliation claims. Those submissions do not point to any procedural hiccup that resulted in an incomplete presentation in the summary judgment briefs, but instead simply rehash arguments already rejected on the merits. Consequently, the court declines to reconsider the denial of summary judgment on the statutory retaliation claims. *See Moro*, 91 F.3d at 876; *see also Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005) (cautioning district judges against reconsidering decisions made by another district judge).

For the foregoing reasons, Defendants' motion for reconsideration is granted in part and denied in part. Defendants are entitled to summary judgment on Renta's claims for gender, race, and national origin discrimination. Defendants are not entitled to summary judgment on Renta's retaliation claims against Cook County and Tomar, which will proceed to trial.

January 26, 2011

_____
United States District Judge